## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENYA LYNCH,<br>          Plaintiff,<br><br>     v.<br><br>JULIE A. SU,[1]<br>ACTING SECRETARY OF LABOR<br>UNITED STATES DEPARTMENT OF<br>LABOR,<br>          Defendant. | CIVIL ACTION NO. 22-cv-00091 |

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR SUMMARY JUDGMENT

Defendant, Martin J. Walsh, in his official capacity as Secretary of Labor of the United States Department of Labor, by and through his attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Stacey L. B. Smith, Assistant United States Attorney for the same District, respectfully moves the Court, pursuant to Federal Rules of Civil Procedure 12(c) and 56, for judgment on the pleadings and/or for summary judgment against plaintiff on all claims. The bases for this motion are set forth fully in the attached memorandum of law.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Acting Secretary Julie A. Su is substituted for former Secretary Martin J. Walsh.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

/s/ Susan R. Becker on behalf
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Stacey L.B. Smith
STACEY L. B. SMITH
Assistant United States Attorney

DATED: May 8, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENYA LYNCH,<br>　　　　Plaintiff,<br><br>　　v.<br><br>JULIE A. SU,[2]<br>ACTING SECRETARY OF LABOR<br>UNITED STATES DEPARTMENT OF<br>LABOR,<br>　　　　Defendant. | CIVIL ACTION NO. 22-cv-00091 |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR
SUMMARY JUDGMENT**

## I.    INTRODUCTION

*Pro se* plaintiff Kenya Lynch ("Plaintiff" or "Lynch"), filed this employment

discrimination action on January 3, 2022 alleging violations of: (1) Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) the Age Discrimination in

Employment Act of 1976, 29 U.S.C. § 621 *et seq.*; and (3) the Rehabilitation Act of

1973, 29 U.S.C. § 791. The Complaint asserts that between October 2018 and July

2019, her current employer, the United States Department of Labor ("DOL" or the

"Agency"), took discriminatory action against her because of her protected

characteristics—race, color, religion, sex, age, national origin, disability—and her

involvement in prior Equal Employment Opportunity ("EEO") activities. Generally,

---

[2] Pursuant to Fed. R. Civ. P. 25(d), Acting Secretary Julie A. Su is substituted for
former Secretary Martin J. Walsh.

plaintiff claims she was denied promotion, subjected to unequal assignments, and more severely scrutinized than others.

Judgment should be granted in defendant's favor pursuant to Federal Rule of Civil Procedure 12(c) or 56. First, several of plaintiff's claims suffer because she failed to exhaust required administrative remedies before filing suit. Second, for other claims, she fails to present a *prima facie* case of discrimination because defendant's alleged acts do not amount to adverse employment actions within the meaning of the employment discrimination laws, or because she cannot show that similarly situated employees outside her protected class were treated more favorably. Third, the record establishes irrebuttable, non-discriminatory reasons for the agency's actions. Fourth, plaintiff has not adequately pleaded a hostile work environment claim, and in any event, the record establishes that she cannot meet its elements. Finally, plaintiff failed to exhaust administrative remedies for her retaliation claims or otherwise cannot prove the elements.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Kenya Lynch is a level GS-12 Investigator within the Employee Benefits Security Administration ("EBSA") of the DOL in Philadelphia, Pennsylvania. Complaint ¶ 11. She has been employed by the DOL since 2009. *Id.* She identifies herself as follows: race (Black), color (Black), sex (female), religion (Islam), age (49 as of 2019), national origin (Costa Rican), and disability (hearing impaired). Compl. at 4. She alleges that at all relevant times, her first, second, and third-level supervisors were Stephanie D. Thimodo (Supervisory Investigator),

Norman D. Jackson (Deputy Regional Director, "DRD"), and Michael A. Schloss (Regional Director, "RD"). *Id.* ¶¶ 4-6.

On October 12, 2018, plaintiff initiated an informal EEO complaint of discrimination with the DOL's Civil Rights Center ("CRC"). *Id.* ¶ 34. The informal complaint alleged her supervisors discriminated against her in various ways based on age, sex, disability, religion, national origin, and color. Ex. A, Report of Investigation ("ROI") at 16-17, 29-30, 49-59. Plaintiff further alleged that she was retaliated against for engaging in certain EEO activities and subjected to a hostile work environment. *Id.*

Ms. Lynch subsequently filed a formal EEO complaint with the CRC on January 28, 2019, which she later clarified and amended on February 26, 2019, and July 25, 2019. Ex. A at 8-13, 86-92, 94-97. The CRC accepted all but one[3] of her claims for adjudication, which were as follows:

> <u>Claim 1:</u> On October 3, 2018, Complainant was not selected for the position of Employee Benefits Investigator, GS-13 posted under announcement number MS18-PHIL-EBSA-0072.
> <u>Claim 2:</u> On an ongoing basis, the agency has disproportionately assigned prominent cases with higher monetary results, opportunities for advancement, awards/recognition, and training to younger white males.
> <u>Claim 3:</u> On an ongoing basis, the Regional Director has been antagonistic, condescending and patronizing towards Complainant, and the District Regional Director has admonished Complainant via emails, referred to her as "you people" and referred to women as the source and cause of the issues in the office.
> <u>Claim 4:</u> On an ongoing basis, Complainant's work has been disproportionately scrutinized over that of her peers.

---

[3] The CRC dismissed plaintiff's claim regarding "grade promotion during student conversion" pursuant to the equitable grounds of laches. Ex. B, DOL Final Agency Decision ("FAD") at 3.

<u>Claim 5:</u> On May 6 and July 11, 2019, Complainant's requests for oral case reviews with her supervisor were denied.

<u>Claim 6:</u> On unspecified dates, Complainant was instructed not to use her radio at her desk, even though others are allowed to do so.

<u>Claim 7:</u> On unspecified dates, Complainant was denied telework, while her co-workers were allowed to telework.

<u>Claim 8:</u> On an unspecified date, Complainant was denied her requested reasonable accommodation of a private office.

<u>Claim 9:</u> On unspecified dates, Complainant was denied case extensions.

<u>Claim 10:</u> On unspecified dates, Complainant was required to request official time in advance while others were not required to do so, and these requests were scrutinized more than those of her peers.

<u>Claim 11:</u> On unspecified dates, Complainant has been required to work on her cases independently, even though her peers have been provided with assistance on their cases, including assistance provided by her.

<u>Claim 12:</u> On unspecified dates, Complainant has not been given credit for work that she completed.

<u>Claim 13:</u> On unspecified dates, management officials (knowing of Complainant's hearing impairment) have deliberately spoken in a low voice so that Complainant will not hear them.

<u>Claim 14:</u> On or around October 15, 2019, Complainant had a meeting with her supervisor to obtain guidance on issues related to her cases, wherein Complainant expressed concerns with the lack of assistance and level of expectation Complainant received as compared to others, but her supervisor found her responses dismissive.

<u>Claim 15:</u> On or around October 30, 2019, Complainant was aggrieved when she received a "Fully Satisfactory" on her FY2019 annual Performance Appraisal.

On October 5, 2021, the CRC issued its Final Agency Decision ("FAD") on these claims. Ex. B. It concluded that Ms. Lynch failed to establish that she was subjected to disparate treatment, a hostile work environment, or retaliation. *Id.* at 68.

On January 3, 2022, Lynch exercised her option to file a federal complaint in the United States District Court for the Eastern District of Pennsylvania pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1976, 29 U.S.C. § 621 *et seq*, and the

4

Rehabilitation Act of 1973, 29 U.S.C. § 791. The Complaint alleges, in paragraphs 17 through 33, claims of discrimination and retaliation based on race, color, religion, sex, age, disability, national origin, and plaintiff's involvement in prior EEO activities. *Id.* Generally, plaintiff alleges these discriminatory and retaliatory actions occurred when she was denied promotion, subjected to unequal case assignments, and more severely scrutinized than others outside her protected class. *Id.* Specifically, plaintiff alleges the following actions were discriminatory and retaliatory:

> Paragraph 17: On October 3, 2018, Plaintiff was not selected to the position of Employee Benefits Investigator, GS-13, posted under the vacancy announcement: MS-18-PHIL-EBSA-0072, at EBSA, Philadelphia Regional Office.
> Paragraph 18: On June 8, 2020, Plaintiff was not selected to the position of Employee Benefits Investigator, GS-13, posted under the vacancy announcement: MS-20-CHI-EBSA-0014, at EBSA, Philadelphia Regional Office.
> Paragraph 19: Since 2009, Plaintiff has been assigned less prominent cases leading to lower monetary results or outcome.
> Paragraph 20: On or about May 2019, Plaintiff was denied the opportunity to attend the Federal Law Enforcement Training (FLET) held at FLET Center, in Georgia.
> Paragraph 21: Between 2017 and 2018, Plaintiff was denied her telework request for more than three days a week as a reasonable accommodation.
> Paragraph 22: Since 2012 to present, Plaintiff's work was severely scrutinized, and unfairly managed by Supervisor Stephanie Thimodo, DRD Norman Jackson and RD Michael Schloss.
> Paragraph 23: On or about 2018, Supervisor Thimodo, under the direction of DRD Jackson, requested that Plaintiff provide daily work logs of her activities while on telework under a temporary reasonable accommodation.
> Paragraph 24: On or about May 1, 2019, Supervisor Thimodo in consultation with DRD Jackson denied Plaintiff's request for a case extension on EBSA File No. 20-013221(48).
> Paragraph 25: On or about 2018 and continuously, Plaintiff was denied credit for the work she completed on EBSA File N. 20-011617(48) and other cases.

5

<u>Paragraph 26:</u> On or about July 2, 2019, both DRD Jackson and Supervisor Thimodo required Plaintiff to request official time for union work in advance.

<u>Paragraph 27:</u> Since 2012 to the present, Plaintiff was held to a higher standard of performance on par with Senior Investigators by her first level supervisor, Stephanie Thimodo, and was told by Supervisor Thimodo to be "perfect 100% of the time" on several occasions.

<u>Paragraph 28:</u> When Plaintiff questioned her performance standard in November 2018, on December 12, 2018, Plaintiff was accused of lying by RD Schloss and DRD Jackson.

<u>Paragraph 29:</u> RD Schloss and DRD Jackson have been antagonistic, condescending, and patronizing to Plaintiff on many occasions, including but not limited to (1) in June 2019 during a bi-annual meeting with Labor Management Relation staff and the union; and (2) in March 2019 during a grievance meeting involving Plaintiff's performance rating.

<u>Paragraph 30:</u> On May 6, 2019, and July 11, 2019, Supervisor Thimodo denied Plaintiff an oral case review.

<u>Paragraph 31:</u> Since 2012, Plaintiff was denied request to meet for technical assistance or proper guidance from her supervisor and was told to work on her own and independently and not allowed to reach out to senior level staff or experts in the National Office for assistance.

<u>Paragraph 32:</u> Plaintiff was not allowed to use a radio at her desk while other investigators without protected status were allowed to do so.

<u>Paragraph 33:</u> On or around October 30, 2019, Plaintiff was rated "Fully Satisfactory" by Supervisor Thimodo on her FY2019 annual performance appraisal.

Plaintiff seeks lost wages, a grade/step adjustment, change of her performance ratings to exemplary with bonus awards, transfer to another office, and although she is *pro se,* reimbursement for legal and consulting fees. Compl. ¶ 16.

## III.    LEGAL STANDARD

### A.    Judgment on the Pleadings Under Fed. R. Civ. P. 12(c).

Defendant moves for judgment on the pleadings as to certain of plaintiff's claims since the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply

to a Rule 12(b)(6) motion to dismiss. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

A motion to dismiss tests the legal sufficiency of the complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). Fed. R. Civ. P. 12(b)(6) requires that the complaint "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) challenge to the sufficiency of a complaint, this "plausibility" standard requires the reviewing court to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor, although the reviewing court need not do so as to any legal conclusions or conclusory statements. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.)

When deciding a motion to dismiss, the Court may consider the following without converting the motion to one for summary judgment: (1) the allegations on the face of the complaint, taken as true; (2) any documents referenced in the complaint; (3) matters of public record such as court records; and (4) undisputedly authentic documents that the plaintiff has identified as a basis of his claims and that the defendant has attached as exhibits to the motion to dismiss. *Turicentro, S.A. v. American Airlines,* 303 F.3d 292, 300 (3d Cir. 2002); *Medici v. Pocono Mtn. Sch. Dist.*, No. Civ. A. 09-2344, 2010 WL 1006917, at * 2 (M.D. Pa. Mar. 16, 2010);

7

*see generally Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

### B. Summary Judgment Pursuant to Fed. R. Civ. P. 56.

Defendant asks the Court to consider matters beyond what may be considered under Rule 12(c) when analyzing some of plaintiff's claims. Fed. R. Civ. P. 12(d). Accordingly, defendant also seeks summary judgment under Fed. R. Civ. P. 56.

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can satisfy its burden by pointing out the absence of material evidence to support the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986). Only those facts that can affect the outcome of the case under the governing law are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The nonmovant in turn must support each essential element of its opposition with concrete record evidence. *Celotex*, 477 U.S. at 322-23; *Liberty Lobby*, 477 U.S. at 250. The movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323. Defendant need show only that there is an absence of legally sufficient record evidence to support plaintiff's claims and need not negate them. *Celotex*, 477 U.S. at 325.

While courts should view the facts in the light most favorable to the nonmoving party and should draw all justifiable inferences in that party's favor, *Liberty Lobby*, 477 U.S. at 255, to avoid summary judgment the nonmoving party "must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the non-movant.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal alteration and citation omitted). The nonmovant may not rely upon "bare assertions, conclusory allegations or suspicions," to show the existence of a genuine issue warranting trial. *Podonik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005); *Quiroga v. Hasbro*, 934 F.2d 497, 500 (3d Cir. 1991 (may not rest upon mere allegations, general denials, or vague statements). Nor may the nonmovant rely upon inadmissible evidence, such as hearsay, to defeat summary judgment. Fed. R. Civ. P. 56(c)(2).

## IV.    ARGUMENT

### A.    Judgment on the Pleadings Should Be Granted in Defendant's Favor as to Plaintiff's Claims in Paragraphs 18, 20, 21, 22, and 23 of the Complaint Because She Did Not Exhaust Requisite Administrative Remedies.

Lynch was first required to exhaust administrative remedies—that is, aggrieve each of her claims with her employing agency—before filing this suit for employment discrimination. *See Webb v. City of Philadelphia*, 562 F.3d 256, 262 (3d Cir. 2009) (addressing Title VII claims (citations omitted)); *Hildebrand v. Allegheny County*, 757 F.3d 184, 190 (3d Cir. 2014) (addressing ADEA claims (citations omitted)); *Spence v. Straw*, 54 F.3d 196, 201 (1995) (addressing Rehabilitation Act claims (citations omitted)). A plaintiff "must [first] seek relief in the agency that has

9

allegedly discriminated against" her. *Brown v. Gen'l Services Admin.*, 425 U.S. 820, 832 (1976) (discussing Title VII claims); 29 U.S.C. § 626 (discussing ADEA claims); 29 U.S.C. § 794a (discussing Rehabilitation Act claims); 29 C.F.R. § 1614.105(a)(1) and (2) (listing pre-complaint processing requirements under Title VII). Although the exhaustion requirement is not jurisdictional in nature, the rule is meant to "provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999).

When the DOL is the employing agency, the CRC must first be afforded the opportunity to investigate a formal complaint of discrimination and create a Report of Investigation ("ROI") for the aggrieved party, who then may either request a hearing before the Equal Employment Opportunity Commission ("EEOC") or request a Final Agency Decision ("FAD") from the CRC. 29 C.F.R. §§ 1614.101-110. A party who requests a final decision then has thirty (30) days from the date of the decision to appeal to the EEOC or ninety (90) days from the date of the decision to file a civil action in a federal District Court. *Id.* A party may select to file both an appeal with the EEOC and a civil action in a federal district court. *Id.*

As discussed above, the CRC accepted all but one of Lynch's claims for adjudication, after she took advantage of several opportunities to amend and clarify her complaint. Lynch did not raise any claims relating to allegations set forth in the following five paragraphs of the Complaint: Paragraph 18 (relating to a non-selection in 2020), Paragraph 20 (relating to being denied training at the FLETC in

Georgia), Paragraph 21 (relating to being denied telework in 2017 and 2018),

Paragraph 22 (relating to being assigned unnecessary tasks or having deadlines

changed without just cause), or Paragraph 23 (relating to being required to provide

work logs). Ex. B at 1-3. The FAD has no discussion of these claims or any

indication that plaintiff alleged them. Ex. B.

The claims in these five paragraphs of the Complaint were not adjudicated by

the CRC. As a result, judgment on the pleadings should be granted in defendant's

favor on the following claims in the Complaint for failure to exhaust administrative

remedies:

> Paragraph 18: On June 8, 2020, Plaintiff was not selected to the position
> of Employee Benefits Investigator, GS-13, posted under the vacancy
> announcement: MS-20-CHI-EBSA-0014, at EBSA, Philadelphia Regional
> Office.
> Paragraph 20: On or about May 2019, Plaintiff was denied the
> opportunity to attend the Federal Law Enforcement Training (FLET) held
> at FLET Center, in Georgia.
> Paragraph 21: Between 2017 and 2018, Plaintiff was denied her telework
> request for more than three days a week as a reasonable accommodation.[4]
> Paragraph 22: Since 2012 to present, Plaintiff's work was severely
> scrutinized, and unfairly managed by Supervisor Stephanie Thimodo,
> DRD Norman Jackson and RD Michael Schloss.[5]

---

[4] Plaintiff alleges in Claim 7 of her EEO complaint that she was denied telework on
unspecified dates. Ex. B at 2. However, the alleged incidents she described in
support of that claim occurred in 2010 and 2012, not 2017 and 2018 as alleged for
the first time in this action. Ex. B at 14-16.

[5] Plaintiff only vaguely asserted in Claim 4 of her EEO complaint that her work was
disproportionately scrutinized on an ongoing basis. Ex. B at 2. Her allegations in
support of her EEO claim did not include, and therefore did not put the agency on
notice of, the assertions she raises in paragraphs 22(a) and (b) of the Complaint. In
these paragraphs, she claims for the first time that her supervisors assigned tasks
to derail her case timeliness and performance and changed deadlines without just
cause or explanation. Ex. B at 11-12. Alternatively, as discussed below, claims
based on these types of allegations fail because they are not adverse employment
actions within the meaning of the anti-discrimination statutes. See *Ferguson v.*

<u>Paragraph 23:</u> On or about 2018, Supervisor Thimodo, under the direction of DRD Jackson, requested that Plaintiff provide daily work logs of her activities while on telework under a temporary reasonable accommodation.

**B.    Judgment Should Be Granted in Defendant's Favor as to Plaintiff's Claims in Paragraphs 22 and 24-33 of the Complaint Because the Alleged Conduct Does Not Amount to Adverse Employment Action.**

As noted above, Lynch invokes three employment discrimination statutes in this action. Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against [an] individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 501 of the Rehabilitation Act prohibits federal agencies from discriminating against employees based on disability. 29 U.S.C. § 791, *et seq.* The Age Discrimination in Employment Act ("ADEA") prohibits discrimination motivated by age against individuals 40 years and older. 29 U.S.C. § 621. Since Lynch does not allege any direct evidence of discrimination, her claims under each of these statutes is governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

---

*Deptford Twp.*, No. Civ. A. 06-2112, 2008 WL 5401630, at *5 (D.N.J. Dec. 22, 2008) ("Allegations of intense scrutiny, overly critical supervision, unnecessary reprimands or derogatory comments do not constitute an adverse employment action.") (citing B*uffa v. New Jersey State Dep't of Judiciary*, 56 Fed. App'x. 571, 576 (3d Cir.2003)); *Yarnall v. Philadelphia Sch. Dist.*, 57 F. Supp. 3d 410, 422 (E.D. Pa. 2014).

First, the plaintiff has the initial burden to establish a *prima facie* case of discrimination. *McDonnell*, 411 U.S. at 802. Generally, whether her claims arise under Title VII, the ADEA, or the Rehabilitation Act, to make out a *prima facie* case of discrimination, Lynch must show that: (1) she is a member of a class protected by these statutes; (2) she was a qualified individual; (3) she suffered an adverse employment action; and (4) similarly situated persons who are non-members of the protected class were treated more favorably under circumstances giving rise to an inference of discriminatory motive. *Willis v. UPC Children's Hosp. of Pitts.*, 808 F. 3d 638, 644 (3d Cir. 2015); *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 591 (E.D. Pa. 2017).

If the plaintiff succeeds, the burden shifts to defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Willis*, 808 F. 3d at 644. This burden is "relatively light," *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013), and can be satisfied by the agency "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994.) The agency's burden is one of production, not persuasion. *Stanziale v. Jargowsky*, 200 F. 3d 101, 105 (3d Cir. 2000). The agency need not prove that its proffered reason motivated its decision; rather, it need only show that it could have motivated the unfavorable decision. *Fuentes*, 32 F.3d at 763; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999.)

13

If the agency satisfies its burden, the plaintiff must then produce a preponderance of the evidence from which a reasonable factfinder could conclude that the proffered reason was merely a pretext for intentional discrimination. *Willis*, 808 F.3d at 644; *Shaner*, 204 F.3d at 494. In other words, the plaintiff must offer evidence from which a fact-finder could conclude that the offered reasons were not the real reasons for the unfavorable actions, but a mere pretext for discrimination. *Willis*, 808 F.3d at 645; *Shaner*, 204 F.3d at 494. The plaintiff must show pretext by a preponderance of the evidence.

Lynch cannot meet her burden to establish a *prima facie* case of discrimination as to the claims she asserts in paragraphs 22 and 24 through 33 of the Complaint. Defendant does not challenge that Lynch is a member of each protected class to which she claims to belong, or that she is a qualified individual. However, the decisions and actions Lynch complains of in these paragraphs are not actionable because they do not amount to adverse employment actions.

The Supreme Court defines a tangible, adverse employment action as a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits. *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 430-31 (3d Cir. 2001) (quoting *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998). The Third Circuit has defined an adverse employment action under Title VII for discrimination claims as an action that is "serious and tangible enough to alter an employee's compensation,

terms, conditions, or privileges of employment. *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004).

The alleged actions Lynch complains of in paragraphs 22 and 24 through 33 of the Complaint do not amount to tangible, adverse employment actions. In these paragraphs, Lynch argues she was: (i) severely scrutinized; (ii) denied a deadline extension for a specific case; (iii) not given credit for work; (iv) required to request official time off in advance; (v) held to a higher standard of performance; (vi) accused of lying; (vii) spoken to in an antagonistic way; (viii) denied oral case reviews; (ix) told to work independently; (x) not allowed to use a radio at her desk; and (xi) rated Fully Satisfactory on her fiscal year 2019 Performance Appraisal. However, "allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *King v. Louisiana*, 294 Fed. App'x 77, 85 (5th Cir. 2008) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Raffaele v. Potter*, No. Civ. A. 09-3622, 2012 WL 33035, at *7 (E.D. Pa Jan. 6, 202) ("difficulty and unfairness alone are not enough to show discrimination"). An employment action is not materially adverse if it merely bruises the ego. *Funayama v. Nichia America Corp.*, No. Civ. A. 08-5599, 2011 WL 1399844, at *16 (E.D. Pa. April 13, 2011). Moreover, the employment discrimination statutes do not represent "a general civility code for the American workplace." *Oncale v. Sundower Offshore Servs.*, 523 U.S. 75, 80-81 (1998).

15

Lynch's allegations in paragraphs 22 and 24 through 33 are a laundry list of complaints that are either unfounded or the type the Third Circuit has described as "petty slights and workplace grievances, rather than actionable adverse employment actions." *Yarnall v. Philadelphia Sch. Dist.*, 57 F. Supp. 3d 410, 421 (E.D. Pa. 2014); *see also*, *Ugorji v. New Jersey Environmental Infrastructure Trust*, No. Civ. A. 08-5424, 2012 WL 1964524, at *5 n. 8 (D.N.J. May 30, 2012) (no adverse  employment action when plaintiff was: (1) ordered to remove a bag plaintiff had used for years; (2) followed and yelled at; (3) monitored while in plaintiff's office and at copy machines; and (4) denied an ergonomically sufficient workstation); *Pagan v. Holder*, 741 F.Supp.2d 687, 696 (D.N.J. 2010) (no adverse employment action when plaintiff complained of: (1) being denied requests for days of annual leave; (2) enduring a three week delay in repairing an air conditioner; (3) having to work alone in the gymnasium; (4) having personal belongings boxed up and removed from her former work location; (5) receiving supervisory reports for her failure to comply with work policies; and (6) not being dismissed from work during a snow storm); *Clayton v. Pennsylvania Dept. of Welfare*, 304 Fed. App'x 104, 108 (3d Cir.2008) (no adverse employment action for plaintiff who: (1) was threatened with furlough; (2) had his employee mailbox moved to another building; (3) had a desk removed from his office; (4) had his office assignment changed multiple times; (5) was denied a bonus that he was ineligible for; and (6) received cash payments later than he should have received them); *Blake v. Penn State Univ. Greater Allegheny Campus*, No. Civ. A. 09-1182, 2011 WL 841374, at *9–10 (W.D. Pa. March 8, 2011)

(no adverse employment action when plaintiff complained of being: (1) subjected to monthly disciplinary conferences in the absence of rule violations; (2) berated in front of co-workers on minor or insignificant grounds; (3) burdened with harsh work assignments; and (4) overly monitored at work).

### (i)    Paragraph 22 – Plaintiff's Allegation of Severe Scrutiny Does Not Meet the Standard for An Adverse Employment Action.

Lynch generally alleges her work was severely scrutinized and she was unfairly managed by her superv Lynch acknowledges, however, that pointing out areas of improvement is part of a supervisor's job. Ex. B at 11. "Allegations of intense scrutiny, [and] overly critical supervision" do not constitute an adverse employment action. See *Ferguson v. Deptford Twp.*, No. Civ. A. 06-2112, 2008 WL 5401630, at *5 (D.N.J. Dec. 22, 2008) (citing *Buffa v. New Jersey State Dep't of Judiciary*, 56 Fed. App'x 571, 576 (3d Cir.2003)); *Yarnall*, 57 F. Supp. 3d at 422.

She asserts that Mr. Jackson and Mr. Schloss assigned tasks she felt were unnecessary to advance her cases and that her case deadlines were changed without just cause or explanation Compl. ¶22(a-b). Lynch provides no detail about these allegations in the Complaint—such as what the tasks or cases were, or when these alleged actions took place. And as noted above, these allegations fail in the first instance because they were not raised in her EEO Complaint. Nonetheless, assigning tasks and deadlines are fundamental supervisory functions that do not amount to adverse employment actions. *See McClelland v. Dechert, LLP*, No. Civ. A. 21-2702, 2022 WL 2109190, at *7 (E.D. Pa. June 10, 2022).

### (ii) Paragraph 24 – Plaintiff's Allegation She Was Denied a Case Extension Does Not Meet the Standard for An Adverse Employment Action.

Lynch alleges that on or about May 1, 2019, she was denied an extension for EBSA File No. 20-013221(48) Compl. ¶24. However, upholding assignment deadlines is not an adverse employment action. *C.f. Yarnall*, 57 F. Supp. 3d at 421 (even being "burdened with harsh work assignments" does not amount to an adverse employment action); *AuBuchon v. Geithner*, 743 F.3d 638, 645 (8th Cir. 2014) (accelerated deadlines constituted petty slight or minor annoyance that all employees experience).

### (iii) Paragraph 25 – Plaintiff's Allegation She Was Denied Credit for Work Does Not Meet the Standard for An Adverse Employment Action.

Lynch alleges that "on or about 2018, and continuously, [she] was denied credit for the work she completed on EBSA File No. 20-011617(48) and other cases." Compl. ¶25.

As an initial matter, Lynch does not identify the "other cases" for which she was allegedly denied credit. To obtain summary judgment on this allegation, the Agency need show only that there is an absence of legally sufficient record evidence. *Celotex*, 477 U.S. at 325. It is not required to "negate" plaintiff's claim. *Id.* Lynch cannot avoid summary judgment based on her "bare assertions, conclusory allegations or suspicions" that she was denied credit during unspecified times, for unspecified cases. *Podonik*, 409 F.3d at 594.

Moreover, the record contradicts her allegation regarding denial of credit for "other cases." Plaintiff received multiple awards in 2018 for her accomplishments in Fiscal Year 2017. She received Secretary Honor Awards for her work on both the Dietz & Watson Pension Plans Investigative Team and the Terminated Vested Participant Project. Ex. C, DOL00002 - Awards List 2016-2018. These awards are posted on the Agency's intranet and are visible to Agency employees, including Lynch.

As to her allegation regarding the Agency's denying her credit for work on EBSA File No. 20-011617(48), as will be discussed below, the agency concedes that neither Lynch, nor anyone in the Philadelphia DOL Office for that matter, received credit for work on the Abington case. And in any event, this claim fails because not receiving an award does not amount to an adverse employment action—it is not "a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Burlington Indus. Inc.*, 524 U.S. at 749; *c.f. AuBuchon*, 743 F.3d at 645 (supervisor's failure to "adequately laud" plaintiff's job performance in evaluation did not amount to retaliatory adverse employment action). While Lynch desired recognition for her work on this case, an employment action is not materially adverse if it merely bruises the ego. *Funayama*, 2011 WL 1399844, at *16.

> **(iv)    Paragraph 26 – Plaintiff's Allegation that She was Required to Request Official Time for Union Work in Advance.**

Lynch alleges that on or about July 2, 2019, her supervisors required her to request official time for union work in advance. Compl. ¶26. This request for advance notice does not amount to an adverse employment action for two reasons. First, as Lynch concedes, she is required to provide advance notice of official union time off as part of her collective bargaining agreement. Ex. D., Lynch Dep. at 104:23-105:1. Plaintiff cannot point to any case establishing that compliance with the terms of a collective bargaining agreement is a discriminatory adverse employment action. Second, the Agency granted Lynch's request for official union time, even though she made the request the same day she needed to take the time off. Ex. A at 489-90. In his email granting the request, Mr. Jackson merely reminded Lynch that she should request such time off as far in advance as possible, per the terms of the collective bargaining agreement. *Id.* No negative action was taken against Lynch.

      **(v)**    **Paragraphs 27, 28, and 29 – Plaintiff's Allegations that Her Supervisors Held Her to a Higher Standard of Performance and Were Antagonistic Do Not Meet the Standard for Adverse Employment Action.**

Lynch alleges she was held to a higher standard of performance and told to be "perfect 100%" of the time (Paragraph 27); accused of lying (Paragraph 28); and that supervisors have been antagonistic, condescending, and patronizing (Paragraph 29.)  While defendant denies these allegations, as discussed above when addressing Paragraph 22, this alleged conduct does not amount to a materially adverse employment action. They are "petty slights and workplace grievances, rather than actionable adverse employment actions," *Yarnall*, 57 F. Supp. 3d at 421,

that did not affect the compensation, terms, conditions, or privileges of Lynch's employment. *Storey*, 390 F.3d at 764.

Even accepting Lynch's allegation that she was told to be "perfect 100% of the time," this claim fails. As noted above, "[a]llegations of intense scrutiny, [and] overly critical supervision" do not constitute an adverse employment action. *See Ferguson*, 2008 WL 5401630, at *5 (citing *Buffa*, 56 Fed. App'x at 576; *Yarnall*, 57 F. Supp. 3d at 422.

As to Lynch's allegations in paragraphs 28 and 29 regarding her supervisors' alleged attitudes towards her, bruising the ego of an employee also does not amount to an adverse employment action. Defendant denies the allegations; however, even accepting them as true, such comments are not actionable. "[A]llegations of unpleasant work meetings, verbal reprimands, . . . and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *King*, 294 Fed. App'x at 75 (citation omitted). The employment discrimination statutes do not represent "a general civility code for the American workplace." *Oncale*, 523 U.S. at 80-81.

### (vi)    Paragraph 30 – Plaintiff's Allegation that She Was Denied Oral Case Reviews Does Not Meet the Standard for An Adverse Employment Action.

Lynch alleges she was denied oral case reviews by Ms. Thimodo on May 6, 2019 and July 11, 2019. The agency concedes she did not receive an oral case review at the time of her May 6, 2019 request because Ms. Thimodo was at a manager's training and unable to meet with Lynch. Ex. A at 1317-18. Ms. Thimodo therefore

requested that Lynch put her questions in writing so Ms. Thimodo could respond by email. *Id.* She was not required to comply with Lynch's request that the oral case review take place during Ms. Thimodo's off-duty hours outside of training, such as during lunch or breaks. Ex. A.2, Supplemental ROI at 108. Lynch has presented no evidence that having her case review conducted in writing, as opposed to orally, resulted in a significant change in her employment terms, conditions, or status. *Burlington Indus. Inc.*, 524 U.S. at 749.

As to Lynch's July 11, 2019 request, Ms. Thimodo agreed to an oral case review and requested dates and times for her availability. Ex. A at 1317-18; 1402-1403. Lynch never responded to Ms. Thimodo's email. *Id.* at 1318.

### (vii)    Paragraph 31 – Plaintiff's Allegation that She Had to Work Independently Does Not Meet the Standard for An Adverse Employment Action.

In Paragraph 31, Lynch raises a vast and non-specific allegation that since 2012, she "was denied request [sic] to meet for technical assistance or proper guidance from her supervisor and was told to work on her own and independently and not allowed to reach out to senior level staff or experts in the National office for assistance." Compl. ¶ 31. Lynch provides no details as to who denied her requests, the nature of her requests, when these denials supposedly occurred, or how she was allegedly prevented from contacting individuals. Nonetheless, even viewing these allegations in the light most favorable to plaintiff, they do not amount to actionable adverse employment actions, as there is no evidence that these alleged actions

resulted in a significant change in Lynch's employment terms, conditions, benefits or status. *Burlington Indus. Inc.*, 524 U.S. at 749; *Storey*, 390 F.3d at 764.

> **(viii) Paragraph 32 – Plaintiff's Allegation that She Was Not Allowed to Use a Radio at Her Desk Does Not Meet the Standard for An Adverse Employment Action.**

Lynch's allegation in Paragraph 32 that she was not allowed to use her radio at her desk does not constitute an adverse employment action. In the first instance, Lynch did not experience any negative action because she requested, and received, a private office, where she was permitted to play her radio. Ex. D at 51:3-25. And even if she had been restricted in her use of a radio, there is no evidence that it resulted in a significant change in her employment terms, conditions, benefits or status. *Burlington Indus. Inc.*, 524 U.S. at 749; *Storey*, 390 F.3d at 764.

> **(ix) Paragraph 33 – Plaintiff's Allegation that She Was Rated Fully Satisfactory on Her Fiscal Year 2019 Performance Appraisal Does Not Meet the Standard for An Adverse Employment Action.**

Finally, Lynch's allegation in paragraph 33 that she was rated Fully Satisfactory on her fiscal year 2019 Performance Appraisal also fails because it does not amount to an adverse employment action. Recently, in *Kocher v. McDonough*, No. Civ. A. 21-921, 2022 WL 17858056 (E.D. Pa. Dec. 22, 2022), this Court granted summary judgment in favor of defendant for similar allegations. In *Kocher*, the plaintiff alleged that her low satisfactory and unsatisfactory performance ratings (which were lower than Lynch's fully satisfactory here) were the result of discrimination. The Court held that a negative evaluation, by itself, is not an adverse employment action. *Id.* at *5 *(citing Weston v. Pennsylvania,* 251 F.3d 420,

431 (3d Cir. 2001)); *Raffaele*, 2012 WL 33035, at *4 ("Even a negative evaluation that results in a less than expected wage increase is not *per se* an adverse employment action."). The plaintiff in *Kocher* presented no evidence that the evaluation, even if construed as negative, would have any material impact on the conditions or terms of her employment. *Id.*

Lynch's allegation regarding her Fully Satisfactory rating is likewise insufficient to support a claim of discrimination. First, Lynch has presented no evidence that a Fully Satisfactory rating is a negative rating. Second, even if construed as such, she has presented no evidence of any impact—let alone material impact—the rating had on her employment terms, conditions, benefits, or status.

The alleged actions Lynch complains of in paragraphs 22 and 24 through 33 of the Complaint do not amount to serious and tangible adverse employment actions. Accordingly, she fails to establish a *prima facie* case of employment discrimination with respect to these allegations, and judgment should be granted in favor of the defendant on these claims.

### C. Judgment Should Be Granted in Defendant's Favor as to Plaintiff's Claims of Discrimination in Paragraphs 19, 27 through 30, 32 and 33 of the Complaint Because She Has Not Identified Similarly Situated Comparators.

Lynch also fails to establish the fourth element of a *prima facie* claim of discrimination as to her allegations in paragraphs 19, 27, 28, 29, 30, 32, and 33 of the Complaint. She does not identify similarly situated non-members outside of her protected class who were treated more favorably under circumstances giving rise to an inference of discriminatory motive.

24

Lynch's generalized claims that others were treated differently, and her suspicion of a discriminatory motive for the Agency's alleged actions, is insufficient to support her claims. *Kocher*, 2022 WL 17858056, at *6. To meet this fourth element, Lynch must identify comparator employees outside her protected class who are similarly situated in all relevant respects. *Wilcher v. Postmaster Gen.*, 442 F. App'x 879, 881-32 (3d Cir. 2011). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Id.* at 882; *Durst v. City of Phila.*, 798 F. App'x 710 (3d Cir. 2020). Summary judgment is appropriate "where there is no evidence from which a jury could conclude the parties were similarly situated." *Abdul-Latif v. Cnty. Of Lancaster*, 990 F.Supp.2d 517, 526 (E.D. Pa. 2014).

For the allegations in paragraphs 27, 28, 29, 30, and 33, Lynch either fails to reference any employees being treated differently or flatly states that "others" were. For these allegations, she presents no evidence from which a jury could infer that similarly situated comparators were treated more favorably.

In paragraph 32, plaintiff identifies Elizabeth Vastine as an investigator permitted to use a radio at her desk. However, as Lynch conceded in her EEO affidavit, Vastine, who was an intern, had a different supervisor—a male whose name Lynch could not recall, while Lynch was supervised by Ms. Thimodo. Ex. A.2 at 116-120. As such, Vastine is not a similarly situated comparator.

Lynch alleges in Paragraph 19 that she has been assigned to "less prominent cases leading to lower monetary results or outcomes than other investigators." Compl. ¶19. She avers that another investigator, Brandon Pfister, was assigned to more criminal cases than she, Compl. ¶¶ 19(d) and (e); Ex. F, Pl.'s Interrogatory #13, and that he and other male investigators Cazales, Moran, and Hassler were allowed to refuse healthcare cases, which Lynch considered less prominent. Compl. ¶19(n).

While defendant disputes that Lynch was assigned "less prominent" cases, her claim fails because she has not identified similarly situated comparators. Defendant compiled a list of case assignments from 2010 through present for certain investigators who were identified and agreed upon by the parties. Ex. E, DOL3. This list reveals that Lynch and males she identified had different supervisors. Since 2010, Lynch has had four different supervisors: Fee, Gallagher, McKee, and Thimodo. *Id.* While Cazales has been supervised by Thimodo, he has also been supervised by four other people: Fulton, Bond, Diaz, and Reed. *Id.* Likewise, while Pfister has been supervised by Thimodo, he has also been supervised by three other people: Diaz, Reed, and Finizie. *Id.* Neither Moran nor Hassler have ever shared a supervisor with Lynch. *Id.*[6] There is no evidence from which a fact-finder could infer a discriminatory motive for how plaintiff was

---

[6] By agreement of the parties, Ex. E was only to include individuals who were selected for the 2018 GS-13 vacancy, who applied for the position, or who had been supervised by Thimodo. Since Moran was neither, his case assignments are not included on the list.

26

assigned cases when: (1) she has had several supervisors assign cases to her and (2) she did not share the same supervisors as the males she claims received favorable treatment.

Lynch argues that her second line supervisor, Norman Jackson, the Deputy Regional Director, is the operative supervisor, but this argument is significantly flawed and should be disregarded. Lynch has presented only conjecture that Jackson assigned cases, rather than investigators' first line supervisors. By Lynch's logic, the Secretary of Labor could be the relevant supervisor for all DOL employees.

Lynch has not identified similarly situated comparators for her allegations in paragraphs 19, 27 through 30, 32 and 33 of the Complaint. Accordingly, summary judgment should be granted in defendant's favor on these claims because she cannot establish the fourth element of a *prima facie* case of discrimination.

### D.    Plaintiff Cannot Rebut Defendant's Legitimate, Non-Discriminatory Reasons for Its Actions as Alleged in Paragraphs 17, 19, 24, 25, 26, and 30 of the Complaint.

Even assuming, *arguendo*, that Lynch has established a *prima facie* case of discrimination for her allegations raised in paragraphs 17, 19, 24-26, and 30 of the Complaint, these claims cannot survive summary judgment because the Agency can articulate legitimate, non-discriminatory reasons for its alleged actions. *Shaner*, 204 F.3d at 494.

As discussed above, under the *McDonnell Douglas* framework, if a plaintiff establishes a *prima facie* case of discrimination, the defendant may still achieve summary judgment by articulating a legitimate, nondiscriminatory reason for its

actions. *Willis*, 808 F.3d at 644. Defendants' burden is only one of production, as the plaintiff always maintains the burden of persuasion. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181 ,193 (3d Cir. 2015).

The Agency's burden is "relatively light," *Tomasso v. Boeing Co.*, 44 5 F.3d 702, 706 (3d Cir. 2006), and may be satisfied by articulating any legitimate reason for its action. *Fuentes,* 32 F.3d at 763. That is, "the defendant need not prove that the articulated reason actually motivated the action." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (internal quotations omitted). Whether the defendant has met its burden of production is a determination for the court and "involves no assessment of credibility." *Johnson v. Women's Christian All.*, 76 F. Supp. 2d 582, 586 (E.D. Pa. 1999) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993) ("The burden-of-production determination necessarily precedes the credibility-assessment stage.")).

> ### (i)    Paragraph 17 – Plaintiff's Allegation that She Was Not Selected for the 2018 GS-13 Investigator Vacancy.

Plaintiff challenges her non-selection on October 3, 2018 to the position of Employee Benefits Investigator, GS-13, posted under the vacancy announcement: MS-18-PHIL-EBSA-0072, at EBSA, Philadelphia Regional Office. Compl. ¶17. While the Agency does not challenge Lynch's basic qualifications for the job, the record evidence establishes that the two candidates selected, Brandon Pfister and Efren Cazales, were simply better qualified. This explanation satisfies the Agency's burden to present a legitimate, non-discriminatory reason for plaintiff's non-selection. See *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (employer

presented legitimate, non-discriminatory reason when it explained that selectee was better qualified than plaintiff.)

The Agency interviewed seven candidates for the 2018 GS-13 position posted under the vacancy MS-18-PHIL-EBSA-0072. Ex. A at 299, 301-303. Jackson and Schloss considered the applicants' interview answers, performance ratings, progress on open investigations, writing samples, experience, case results, and case referrals for litigation. Ex. A at 303. Mr. Schloss, the selecting official, testified that "the selected candidates demonstrated superior performance to Ms. Lynch." Ex. A at 524. Pfister and Cazales both provided writing samples that complied with Schloss' request for material that was representative of their own writing ability and "not heavily edited." *Id.* at 525. Their samples "demonstrated superior ability as set forth in the job announcement." *Id.* Lynch, however, did not comply with Schloss' request, instead submitting a writing sample that had been heavily edited by Schloss. *Id.*at 526. Further, Lynch's performance, "particularly with regard to case closings and the related issue of timeliness, was consistently inferior to the selected candidates as well as [to the [non-selected] candidates [Mr. Schloss] ranked higher than Ms. Lynch." Ex. A at 529. Even if neither Pfister nor Cazales had been selected, Lynch was not next in line for the position. Schloss ranked plaintiff fifth of the seven applicants. Ex. A at 520. See *Jacobs v. Mayorkas*, No. Civ. A. 21-165, 2021 WL 3929718, at *4 (E.D. Pa. Sept. 1, 2021) ("Defendant's undisputed evidence that [the selectee] was the top-rated candidate, whereas [the plaintiff] was fourth, following a

regimented, multi-step selection process meets the burden of demonstrating a legitimate, non-discriminatory reason for failing to promote [the plaintiff].")

At the end of a multi-faceted selection process, Brandon Pfister and Efren Cazales were ultimately selected over Lynch and the four other candidates because they were the superior applicants. To defeat summary judgment, the burden shifts back to Lynch to proffer a preponderance of evidence that this reason is pretext for discrimination—in other words, evidence that from which a reasonable fact-finder could either "(1) disbelieve [the Agency's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [the Agency's] action." *Fuentes*, 32 F.3d at 764; *see also Babb v. Wilkie* 140 S.Ct. 1168, 1174 (2020) (holding that, for a federal-sector ADEA claim, the causation standard is that age must be "the but-for cause of" the plaintiff's "differential treatment," which must have played a role in the ultimate decision.). She must demonstrate evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the Agency's] proffered reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for . . . nondiscriminatory reasons.'" *Tomasso,* 445 F.3d at 706 (quoting *Fuentes*, 32 F.3d at 765.)

Lynch's belief that her qualifications were superior is insufficient to contradict the Agency's articulated justifications for her non-selection. *Kocher*, 2022 WL 17858056, at *6; *Jacobs*, 2021 WL 3929718, at *5; *Ruff v. Temple Univ.*, 122 F. Supp. 3d 212, 219 (E.D. Pa. 2015). Even if she could show that the Agency's decision

was wrong or mistaken, that would not be enough to show pretext. *Jacobs*, 2021 WL 3929718, at *4 (the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise); *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1109 (3d Cir. 1997) (the question is not whether the employer made the best, or even a sound, decision; it is whether the real reason is discrimination).

"[W]hat plaintiff requests is protection that [the law] does not afford: for the Court to stand in as decision-maker and determine which of [the] undisputedly qualified candidates was better suited for the [promotion.]" *Jacobs*, 2021 WL 3929718, at *5. Numerous courts in this district have refused to second guess the decision, and selection criteria, of employers, stating that plaintiff's disagreement was insufficient to show pretext. *See, e.g., Delgado v. SEPTA,* No. Civ. A. 06-848, 2007 WL 4355416, at *4 (E.D. Pa. Dec. 10, 2007); *Eaddy v. PA Dept. of Public Welfare Bucks County Assistance Office*, No. Civ. A. 04-5909, 2006 WL 724564, at *7-8 (E.D. Pa. Mar. 20, 2006).

### (ii)    Paragraph 19 – Plaintiff's Allegation that She Was Assigned Less Prominent Cases.

Lynch alleges that since 2009 she has been assigned to "less prominent cases leading to lower monetary results or outcomes than other investigators." Compl. ¶19. She states that she was mainly assigned healthcare cases, and those involving abandoned retirement plans or delinquent retirement contributions, which she considers less prominent than criminal cases. Compl. ¶19(c), (g), (l), and (m). She avers that another investigator, Brandon Pfister, was assigned to twenty criminal

31

cases in 2017, while she has only been assigned to two criminal cases during her employment at DOL. Compl. ¶ 19(d) and (e); Ex. F, Pl.'s Interrogatory #13. Lynch further claims that he and other male investigators Cazales, Moran, and Hassler were allowed to refuse healthcare cases. Compl. ¶19(n).

Lynch's allegation of discriminatory case assignments is belied by the record and based on nothing more than her unfounded beliefs. First, Lynch offers no evidence that the Agency assigned her "less prominent" cases than those assigned to other investigators. Second, the record evidence reflects that the male investigators who were allegedly allowed to refuse less desirable cases—such as healthcare, abandoned plans, or delinquent retirement contributions— in fact handled a significant percentage of those types of cases. As discussed above, the Agency compiled a list of case assignments since 2010 for certain investigators as agreed upon by the parties:

| | Total cases | Healthcare[7] (% of total cases) | Delinquent | Abandoned |
|---|---|---|---|---|
| Cazales | 79 | 48 (60.7%) | 21 | 5 |
| Hassler | 22 | 17 (77.2%) | 3 | 0 |
| Lynch | 59 | 38 (64%) | 22 | 1 |
| Pfister | 136 | 49 (36%) | 21 | 6 |

Ex. E, Case Assignments 2010 through Present, DOL 3. These male investigators worked on about the same number, or sometimes more, of the allegedly "less

---

[7] Healthcare cases are designated by "(48)" at the end of the case number.

prominent" cases than Lynch. Her allegation that she was assigned "less prominent" cases while male investigators were allowed to refuse these assignments is disproved by the evidence.[8]

While plaintiff is correct that Pfister worked on more criminal cases, the Agency explained that investigators were encouraged to target their own cases, and "Pfister routinely reviews an EDS run of plans who file claims on their fidelity bond for losses due to fraud or dishonesty. Many of these result in criminal cases. Through these criminal cases, relationships are built with law enforcement officers. From these relationships, other criminal leads are generated by the investigator." Ex. F, Defs.' Am. Answ. to Interrogatories, 3/7/23 at ¶13. Similarly, Lynch protests that Cazales was assigned to cases involving major companies such as Westinghouse and PNC bank. Compl. ¶ 19(k). However, "Cazales targeted Westinghouse himself using a database readily available to all investigators—EDS." Ex. G, Defs.' Am. Answ. to Requests for Admission, 3/7/23 at ¶ 40. Lynch had almost one year to conduct discovery, ECF ## 6 and 9, but has offered no evidence to contradict the Agency's explanation regarding case targeting. Indeed, the practice of

---

[8] Plaintiff also identified Moran as a male investigator permitted to refuse allegedly less desirable cases. Compl. ¶ 19(n). Defendant did not compile Moran's case assignments because, as previously noted, he was not included in the parties' agreement regarding individuals for whom to collect that information. The list was limited to investigators who either had been supervised by Thimodo, applied for the 2018 GS-13 vacancy, or were selected for that position. Moran did not fall into any of these categories. Accordingly, as previously argued, Moran is not a similarly situated comparator and thus his case assignments are irrelevant to Lynch's claim. Nor are Hassler, Pfister, or Cazales relevant, similarly situated comparators, as discussed above.

targeting cases is consistent with Lynch's admission that she was assigned a criminal case that she targeted and requested. Compl. ¶19(e).

### (iii)    Paragraph 24 – Plaintiff's Allegation that She Was Denied a Case Extension.

Ms. Lynch alleges that on or about May 1, 2019, she was denied an extension for EBSA File No. 20-013221(48) in connection with the Ogontz Avenue Revitalization Corporation ("OARC") Health Plan matter. Compl. at ¶24; Ex. A.2 at 138. The Agency does not dispute that Lynch's request for this case extension was denied; however, the Agency presented legitimate, non-discriminatory reasons for the denial.

Plaintiff requested an extension of the OARC case deadline to attend off-site training for two weeks. Ex. A.2 at 139. Thimodo explained to Lynch that she could not grant the extension because investigator performance standards only provide for extensions where exigent circumstances beyond the investigator's control exist, and training is not an exigent circumstance. Ex. A at 1339. Jackson explained that he supported Thimodo's decision because investigators are subject to performance standards that are negotiated between the Agency and union officials at the national level. *Id.* at 439. These performance standards contain elements that must be achieved, such as timeliness. *Id.* Civil investigations are generally categorized as "30-month" or "18-month" cases, depending on the primary issue under investigation. *Id.* These cases must be completed timely for investigators to meet their performance standards. *Id.* at 439-440.

Lynch alleges case extensions were granted to two other investigators but provides no detail from which to infer a discriminatory motive. She has no knowledge of whether these individuals always were granted extensions, or whether their requests were sometimes denied. She provides no information about when and why these individuals requested extensions, and whether they met the criteria for exigent circumstances. Lynch's unsupported allegations cannot defeat summary judgment.

### (iv) Paragraph 25 – Plaintiff's Allegation that She Was Denied Credit for Work

Lynch alleges that "on or about 2018, and continuously, [she] was denied credit for the work she completed on EBSA File No. 20-011617(48) and other cases." Compl. ¶25. But Lynch does not identify the "other cases" for which she was allegedly denied credit, and the Agency need not provide a legitimate reason for taking some unknown alleged action. To obtain summary judgment on this allegation, the Agency need show only that there is an absence of legally sufficient record evidence. *Celotex*, 477 U.S. at 325. It is not required to "negate" plaintiff's claim. *Id.* Lynch cannot avoid summary judgment based on "bare assertions, conclusory allegations or suspicions" that she was denied credit during unspecified times, for unspecified cases. *Podonik*, 409 F.3d at 594. Moreover, as also detailed above, the record contradicts Lynch's allegation regarding denial of credit for "other cases" because she received multiple awards for casework. Ex. C, DOL00002 - Awards List 2016-2018.

As to Lynch's allegation regarding denial of credit for work on EBSA File No. 20-011617(48), neither Lynch, nor anyone else in the Philadelphia DOL Office, received credit for the results they achieved on that complex healthcare investigation. Ex. A at 453-54. The National DOL Office, and not the Philadelphia regional office, decided to give credit to another regional office that worked on the matter on a global level, and chooses only one office to reward.. *Id.* If the decision had been up to Jackson, he would have credited Lynch for her efforts, as it would have benefited not only plaintiff, but the entire Philadelphia Regional Office. *Id.* at 453-454.

> **(v)     Paragraph 26 –Plaintiff's Allegation that She was Required to Request Official Time for Union Work in Advance.**

Lynch alleges that on or about July 2, 2019, her supervisors required her to request official time for union work in advance. Compl. ¶26. As previously explained, Lynch did not experience any adverse employment action in the first instance because her supervisor granted the request even though it was made the same day she needed to take time off. Ex. A at 489-90. In any event, the Agency articulated a legitimate, non-discriminatory reason for asking plaintiff to request official union time off in advance—she is required to do so as part of her collective bargaining agreement, a fact that she concedes. (Ex. D., Lynch Dep. At 104:23-105:1.)

### (vi)  Paragraph 30 – Plaintiff's Allegation that She Was Denied Oral Case Reviews.

The Agency has unequivocally provided legitimate, non-discriminatory reasons why plaintiff did not receive oral case reviews on or about May 6 and July 11, 2019. At the time of Lynch's May 6, 2019 request, Thimodo was attending a manager's training and unable to meet with plaintiff. Ex. A at 1317-18. Thimodo requested that plaintiff put her questions in writing so there would be a record of the discussion. *Id.* at 1318. Lynch then asked that Thimodo conduct the oral case review during off-duty hours outside of training, such as on Thimodo's lunch or breaks. Ex. A.2, Supplemental ROI at 108.  The Agency has presented a legitimate, non-discriminatory, business reason for Thimodo declining to meet with Lynch while off-duty.

As to Lynch's July 11, 2019 request, Thimodo agreed to an oral case review and requested plaintiff provide dates and times for her availability. Ex. A at 1318; 1402-1403. Lynch never responded to Thimodo's email. *Id.*

The Agency has articulated irrebuttable, legitimate, non-discriminatory reasons for its actions as alleged in paragraphs 17, 19, 24-26, and 30 of the Complaint. Summary judgment on these claims should therefore be granted in defendant's favor.

As summarized in the chart below, each of Lynch's claims of disparate treatment discrimination fails either because: (1) plaintiff failed to exhaust administrative remedies; (2) plaintiff cannot prove a *prima facie* case of discrimination (she did not experience an adverse employment action or did not

identify similarly situated comparators); or (3) the Agency has presented legitimate, non-discriminatory reasons for the alleged actions.

| PARAGRAPH ALLEGATION (including subparagraphs) | FAILED TO EXHAUST | NO *PRIMA FACIE* CASE - NO ADVERSE EMPLOYMENT ACTION | NO *PRIMA FACIE* CASE - NO SIMILARLY SITUATED COMPARATORS | AGENCY PRESENTED LEGITIMATE REASONS |
|---|---|---|---|---|
| 17 – 2018 Nonselection | | | | X |
| 18 – 2018 Nonselection | X | | | |
| 19 – Assigned Less Prominent Cases | | | X | X |
| 20 – Denied Training | X | | | |
| 21 – Denied Telework in 2017 and 2018 | X | | | |
| 22 –Unfairly Managed | X | X | | |
| 23 – Asked to Provided Daily Work Logs | X | | | |
| 24 – Denied Case Extensions | | X | | X |
| 25 – Denied Credit for Work | | X | | X |
| 26 – Request Official Time Off in Advance | | X | | X |
| 27 – Higher Standard of Performance | | X | X | |
| 28 – Accused of Lying | | X | X | |

| | | | |
|---|---|---|---|
| 29 – Antagonistic Supervisors | | X | X | |
| 30 – Denied Oral Case Reviews | | X | X | X |
| 31 – Told to Work Independently | | X | | |
| 32 – Not Allowed to Use a Radio | | X | X | |
| 33 – Rated Fully Satisfactory FY2019 | | X | X | |

### E.    Judgment Should Be Granted in Defendant's Favor as to Any Hostile Work Environment Claim.

### (i)    Plaintiff Did Not Adequately Plead a Hostile Work Environment Claim.

Preliminarily, Lynch's complaint cannot be construed to plead a hostile work environment claim because she fails to satisfy the *de minimis* notice pleading requirement of Fed. R. Civ. P. 8(a)(2). In the "Preliminary Statement" and "Particulars of Allegations" sections of her complaint, Lynch alleges only that "she was discriminated and retaliated against[.]" Compl. at 1 and 4. Only at the very end of her Complaint, in a section titled "Remedies and Relief," does she include a single reference to "hostile working conditions she had endured" in support of her request for lost wages for sick leave taken. *Id.* at ¶ 39. Nowhere else in her Complaint does she mention a hostile work environment. She should not be assumed to pursue this claim because she did not provide the Agency with "'fair notice of what the . . . claim

39

is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Judgment in defendant's favor on any putative hostile work environment claim is appropriate. *See Two Two v. NAPA Transportation, Inc.*, Civ. A. No. 17-CV-02222, 2020 WL 5370039, at *7 (M.D. Pa. Sept. 8, 2020) (granting summary judgment as to a hostile work environment claim where the complaint "makes clear that the count raises a race discrimination claim."); *Raffaele*, 2012 WL 33035, at *5 (declining to consider plaintiff's hostile work environment claim because it was raised for the first time in opposition to a motion for summary judgment). Ms. Lynch should not be afforded leeway on her failure to appropriately raise this claim simply because she is *pro se*. As she points out, she has many years of experience representing other employees in EEO matters. Compl. ¶ 13. She also knew how to explicitly include a hostile work environment claim at the EEO level, so she cannot claim ignorance as to her federal complaint. Ex. A at 100, Ex. B at 1.

Moreover, the Court should not construe a hostile work environment claim here because the practice of inferring such a claim when a plaintiff asserts a disparate treatment claim predicated on discrete events is disfavored. *Raffaele*, 2012 WL 33035, at *5 (E.D. Pa. Jan. 6, 2012) ("[Claims for disparate treatment and hostile work environment] cannot be combined because a claim for hostile work environment is based on the 'pervasiveness' of the employer's discriminatory conduct and is fundamentally different from a claim for disparate treatment, which focuses on discrete events."); *see Haqq v. Pennsylvania Dep't of Pub. Welfare*, No.

Civ. A. 09-0042, 2010 WL 1253452, at *9 (E.D. Pa. Mar. 23, 2010) ("[S]everal District Courts have cautioned against blurring the lines between [disparate treatment and hostile work environment]")

### (ii)    Alternatively, there is Insufficient Evidence to Support a Hostile Work Environment Claim.

Even if Ms. Lynch properly asserted a hostile work environment claim, she cannot satisfy its "demanding" standard. *Gates v. Aramark Campus, LLC*, No. CV 21-1081, 2022 WL 245303, at *8 (E.D. Pa. Jan. 24, 2022) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). Plaintiff has neither alleged nor presented evidence of pervasive, discriminatory conduct. *Raffaele*, 2012 WL 33035, at *5.

To establish a hostile work environment claim, a plaintiff is required to show that: 1) she suffered intentional discrimination because of membership in a protected class, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected her, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability. *Whitmore v. Nat'l R.R. Passenger Corp.*, 510 F. Supp. 3d 295, 308 (E.D. Pa. 2020) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). Plaintiff cannot prove each element of this test and judgment should be granted in defendant's favor on any hostile work environment claim.

### a. The Conduct Plaintiff Alleges Was Not Sufficiently Severe or Pervasive.

Only a workplace "permeated with discrimination, intimidation, ridicule and insult that is sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment" can support a claim of hostile work environment. *Gates*, 2022 WL 245303, at *8 (quoting *Oncale*, 523 U.S. at 80). Courts analyzing whether conduct is sufficiently severe or pervasive consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214–15 (3d Cir. 2017) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)). "'[C]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond [the employment discrimination statues'] purview." *Harris v. SmithKline Beecham*, 27 F. Supp. 2d 569, 577-78 (E.D. Pa. 1998), *aff'd*, 203 F.3d 816 (3d Cir. 1999) (quoting *Forklift Systems, Inc.*, 510 U.S. at 20).

At her deposition, Lynch was given several opportunities to identify any allegations in her Complaint that formed the bases of a hostile work environment claim. Ex. D. The only allegations she mentioned that were also raised in her Complaint were: (1) that she was required to request official time for union

activities in advance; and (2) Jackson was condescending to her. Ex. D at 92:6-7; 92:12-17; 104:23-105:1

The conduct Lynch alleges is not objectively severe. Severe discrimination "must be extreme." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). These allegations invoke common workplace grievances. *See Martinelli v. Penn Millers Ins. Co.*, 269 Fed. App'x 226, 230 (3d Cir. 2008) (supervisor's "unpleasant and annoying" scrutiny not materially adverse); *see also McLintock v. City of Philadelphia*, 504 F. Supp. 3d 411, 428 (E.D. Pa. 2020) ("critique of plaintiff's work and remark that she did not possess a CPA" not materially adverse or severe).

Further, the alleged conduct was not pervasive. "The threshold for pervasiveness and regularity of discriminatory conduct is high." *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014). In general, a plaintiff must show that she was subjected to "repeated, if not persistent acts of harassment" to establish pervasive discrimination. *Capilli v. Nicomatic L.P.*, Civ. A. No. 07-3897, 2008 WL 4140398, at *11 (E.D. Pa. Sept. 8, 2008) (quoting *SmithKline Beecham*, 27 F. Supp. 2d at 578). The more severe the conduct, the less extensive it need be for the Court to find a hostile work environment. *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 116 (3d Cir. 1999). As discussed above, the alleged agency conduct— supervisor antagonism and scrutiny regarding requesting time off—was not severe and amounted to nothing more than common workplace slights and annoyances. As such, it would need to occur extensively to satisfy the "pervasive" prong.

Lynch does not reference any regularly occurring, persistent conduct. Rather, she describes being asked to provide advance notice of official union time on one occasion in July 2019. Compl. ¶ 26. She also vaguely identifies two times in March and June 2019 when Schloss and Jackson were allegedly antagonistic, condescending and patronizing. Compl. ¶ 29. "This is not a case where the alleged harassment is day-to-day and where the events that form the basis of [the] complaint span most of the relevant time period." *Gharzouzi v. Nw. Hum. Servs. of Penn.*, 225 F. Supp. 2d 514, 536 (E.D. Pa. 2002). A "series of isolated incidents" does not equal pervasive discrimination. *Page v. City of Pittsburgh*, 114 F. App'x 52, 54 (3d Cir. Nov. 8, 2004); *King v. City of Phila.*, 66 F. App'x 300, 305 (3d Cir. 2003) (same).

**b.  The Conduct Plaintiff Alleges Did Not Have An Actual or Objectively Reasonable Detrimental Effect.**

Lynch also fails to allege that the alleged supervisor antagonism and scrutiny had an actual detrimental effect on her, or that any such effect would have been objectively reasonable.

She does not allege that the conduct "detracted from her job performance," "discouraged her from remaining on the job," or "altered the conditions of employment." *Sala v. Hawk*, 481 F. App'x 729, 735 (3d Cir. 2012) (citing *Faragher*, 525 U.S. at 778). Lynch remains employed with the Agency, and for the performance appraisal she references in the Complaint she was rated "Fully Satisfactory." Compl. ¶ 33. *See, e.g., SmithKline Beecham*, 27 F. Supp. 2d 569 (granting summary judgment in favor of defendant employer on plaintiff's hostile

work environment claim on the grounds that the plaintiff "produced no evidence that" the defendant's actions "interfered with her ability to do her job").

Nor has Lynch shown that a reasonable person similarly situated would be detrimentally affected by the Agency's alleged actions. "In determining whether a hostile work environment exists, courts must look to a totality of the circumstances to ascertain whether the conduct was 'severe enough to affect the psychological stability of a minority employee.'" *Frazier v. Henry H. Ottens Mfg. Co., Inc.*, No. Civ. A. 11-3987, 2012 WL 1137051, at *8 (E.D. Pa. Apr. 5, 2012) (citing *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 Fed. App'x 876, 880 (3d Cir. 2004)). As such, the fourth prong analysis of a hostile work environment claim—on objective impact— follows the second prong—on the severity or pervasiveness of the harassment. As discussed at length above, the Agency's alleged conduct was neither objectively severe nor objectively pervasive. It thus follows that a reasonable person in Lynch's position would not be detrimentally affected by it. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond [the employment discrimination statutes'] purview." *Forklift Sys., Inc.*, 510 U.S. at 21-22.

As Lynch either fails to plead a hostile work environment claim, or cannot meet its elements, judgment should be entered in defendant's favor.

**F.    Judgment Should Be Entered in Defendant's Favor as to Plaintiff's Retaliation Claims.**

Although her complaint is not clear, Lynch appears to assert that each of the actions alleged in paragraphs 17-33 of the Complaint occurred in retaliation for engaging in the activities she sets forth in paragraphs 13 through 16 of the Complaint. Compl. at 4, "Particulars of Allegations." Plaintiff's retaliation claims fail because she cannot prove her *prima facie* case.

To establish a *prima facie* case of retaliation, she must show "(1) she engaged in activity protected by [the employment discrimination statutes]; (2) the employer took an adverse employment action afterwards; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006); *Slagle v. Cty. of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006). As with her disparate treatment claims of discrimination, if Lynch establishes a *prima facie* case of retaliation, the burden shifts to the Agency to show a legitimate, non-retaliatory reason for its conduct. *Moore*, 461 F.3d at 342. To defeat summary judgment, Lynch must then show, by a preponderance of the evidence, that the proffered explanation is false. *Id.*

**(i)    Plaintiff Failed to Exhaust Administrative Remedies for Claims of Retaliation Based on the Allegations in Paragraphs 18 and 20-23 of the Complaint.**

As fully detailed above, Lynch did not raise the alleged retaliatory employment actions asserted in paragraphs 18 and 20-23 of the Complaint before the CRC during the EEO process. As such, judgment should be granted in the

46

Agency's favor on any retaliation based on these contentions for failure to exhaust administrative remedies. See Section IV A.

> **(ii)     Plaintiff Fails to Establish Retaliatory "Adverse Action" Based on the Allegations in Paragraphs 19 and 24-33 of the Complaint.**

To meet the second element of a retaliation claim—adverse action after engaging in protected activity—Lynch "must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341; quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. While the action required for a retaliation claim, as opposed to a discrimination claim, need not affect the terms and conditions of employment, "it is essential for the adverse action to rise to the level of materiality because 'it is important to separate significant from trivial harms.'" *Raffaele*, 2012 WL 33035, at *8 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 62, 68.) The standard is objective, not based on the subjective feelings of the individual alleging retaliation. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

As explained herein, the actions Lynch alleges in paragraphs 19 and 24-33 of the Complaint are either not supported by the record, or are the type of complaints considered common, trivial, workplace occurrences. For example, Lynch provided no evidence that she was assigned "less prominent" cases, and the record disproved that claim. Ex. E. As another illustration, while Lynch was reminded to comply with the provisions of the collective bargaining agreement that she request official

time off in advance, her supervisor granted her untimely request. Ex. A at 489-90.

Another instance involves Lynch's "Fully Satisfactory" performance evaluation.

Lynch offers no evidence it was even considered a negative rating. Defendant relies

on the arguments set forth above as to why none of the alleged actions in

paragraphs 19 and 24-33 would dissuade a reasonable person from making or

supporting a charge of discrimination.

> **(iii)    Plaintiff Fails to Establish Causation Based on the Allegations in Paragraphs 17, 19 and 24-33 of the Complaint.**

To establish the third element of retaliation—a causal connection between

the protected activity and the adverse action—Lynch must show that her

"'opposition to, or participation in proceedings against, unlawful discrimination and

an action that might have dissuaded a reasonable worker from making or

supporting a charge of discrimination" were connected.'" *Raffaele*, 2012 WL 33035,

at *8.

A plaintiff may establish a causal connection through the "unusually

suggestive temporal proximity" of the adverse action to the protected activity, "a

pattern of antagonism coupled with timing" or other facts supporting an inference of

causation. *Ragsdale v. Univ. of Pennsylvania Health Sys.*, 613 F. Supp. 3d 888, 895

(E.D. Pa. 2020) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267

(3d Cir. 2007)). Plaintiff makes no effort to do so.

### a.    Plaintiff's Service as a Union Steward and EEO Representative Since 2015.

Lynch makes a sweeping allegation that her protected activity includes having served as a union steward and EEO representative since 2015. Compl. ¶13. She provides no support for a causal connection between her having served in this capacity and any of the alleged adverse actions in the Complaint. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Even assuming Lynch's supervisors were generally aware that she served as a union steward and EEO representative, she presents no evidence of an "unusually suggestive" temporal proximity between her activity and any alleged retaliatory actions from which an inference of a causal connection may be established. Lynch merely states that she has served in this capacity "since 2015." Compl. ¶ 13. The temporal proximity between her service and the allegedly retaliatory conduct that took place over three years later in 2018 and 2019 is not unusually suggestive. Compl. ¶2. *LeBoon v. Lancaster Jewish Cmty. Ctr. Assn*, 503 F.3d 217, 231 (3d Cir. 2007); *see Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016) (rejecting the plaintiff's argument that the temporal proximity of approximately one month sufficiently demonstrated a causal connection); *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) (citing instances in which temporal proximity greater than ten days required supplementary evidence of retaliatory motive ); *Carmody v. Pennsylvania State Univ.*, No. Civ. A. 05-cv-1645, 2007 WL 1074862, at *8 (M.D. Pa. Apr. 9, 2007) ("[A] one month gap between settlement of the previous cause of action and the denial for Position No. 1 does not create 'unusually

suggestive facts.'"). Nor does she offer any other evidence of a causal connection, including a pattern of ongoing antagonism or inconsistencies in the Agency's justifications. *LeBoon*, 503 F.3d at 231.

### b. Plaintiff's Testimony as an EEO Witness in May 2016.

Plaintiff also alleges that one of the protected activities in which she engaged was testifying as an EEO witness for another complainant in or about May 2016. Comp. ¶ 14. As an initial matter, Lynch never identified this activity as the basis for any retaliation claim during the EEO process, despite several opportunities to amend her claims. Ex. A at 196; Ex. B at 4. Thus, summary judgment should be granted in defendant's favor as to any retaliation claims based on this witness activity for failure to exhaust administrative remedies. See Section IV A.

She also provides no evidence of any causal connection between this activity and the alleged adverse actions. *Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 362. Lynch provides no evidence that any of her supervisors knew of her testimony in this EEO case. Nor is there any evidence of an "unusually suggestive" temporal proximity. *LeBoon*, 503 F.3d at 231.

### c. Plaintiff's Request for a Private Office in 2011.

Lynch further alleges that her request for a private office in 2011 as a reasonable accommodation based on her disability was a protected activity for which she was retaliated against. Compl. ¶ 15. Again, she cannot meet the causation element of her *prima facie* case. She alleges that the alleged retaliatory actions "took place between October 2018 and July 2019." Compl. ¶ 2. However, she

provides no evidence as to how any of the alleged retaliatory acts she describes in her Complaint that took place during this time frame were because of her request for a private office seven or eight years before.

### d. Plaintiff's Request for Extended Telework in May 2018.

Finally, Lynch alleges that her request for extended telework in May 2018 as a reasonable accommodation based on her disability was a protected activity for which she was retaliated against. Compl. ¶ 16. Here too, plaintiff failed to identify this request as the basis for any retaliation claim during the EEO process. Ex. A at 196; Ex. B at 4. Thus, summary judgment should be granted in defendant's favor as to any retaliation claims based on this request for failure to exhaust administrative remedies. See Section IV A.

Moreover, Lynch again provides no evidence of any causal connection between this request and the alleged adverse actions. *Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 362. She provides no evidence to suggest that any of her supervisor's alleged actions were taken because of the telework request. Nor is there any evidence of an "unusually suggestive" temporal proximity between her request in May 2018 and the alleged adverse actions that occurred several months to more than a year later. *LeBoon*, 503 F.3d at 231; *Tirk*, 673 F. App'x at 241 (one month insufficient); *Blakney*, 559 F. App'x at 186 (temporal proximity greater than ten days required supplementary evidence of retaliatory motive); *Carmody*, 2007 WL 1074862, at *8 (one month insufficient).

**(iv)    Plaintiff Cannot Rebut the Agency's Legitimate Reasons Provided for the Actions Alleged in Paragraphs 17, 19, 24-26 and 30 of the Complaint.**

The Agency has presented legitimate reasons for the actions Lynch alleges in paragraphs 17, 19, 24-26, and 30 of the Complaint. As argued in Section D above, Lynch cannot show at all—let alone by a preponderance of the evidence—that the Agency's proffered explanations are false. *Moore*, 461 F.3d at 342.

All of Lynch's retaliation claims fail either because: (1) she failed to exhaust administrative remedies; (2) she cannot show the elements of her *prima facie* case; or (3) she cannot demonstrate pretext. Therefore, judgment should be granted in defendant's favor as to all of her retaliation claims.

## V.    CONCLUSION

As this Court has aptly articulated:

> The reality of any work environment is that employees and their bosses will always have disagreements and conflicts. Employees will think that the bosses treat them unfairly. Bosses will think that their employees are not doing enough work or a good enough job. This reality, coupled with the fact that an employee and a boss are of a different race, color, religion, sex, or national origin, does not on its own mean that discrimination is afoot.

*Baker v. City of Philadelphia*, No. Civ. A.05-1562, 2009 WL 3579815, at *20 (E.D. Pa. Oct. 27, 2009), aff'd, 405 F. App'x 599 (3d Cir. 2010).

For the reasons discussed above, judgment should be granted in defendant's favor as to each of Lynch's claims, whether alleging disparate treatment discrimination, hostile work environment, or retaliation, pursuant to either Fed. R. Civ. P. 12(c) or 56.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


/s/ Susan R. Becker on behalf
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division


/s/ Stacey L.B. Smith
STACEY L. B. SMITH
Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel:  215-861-8348
Fax:  215-861-8618

Lauren Freeman
Max Dehon
Nathanael Kegel
JoAnn Kim
Certified Law Students
Pursuant to Local Rule of Civil Procedure 83.5.1


Date: May 8, 2023

**CERTIFICATE OF SERVICE**

I certify that on this date I caused a true and correct copy of the foregoing

Motion for Judgment on the Pleadings and/or for Summary Judgment, which was

filed electronically and is available for viewing on the Court's ECF system, to be

electronically served via the Court's CM/ECF system upon plaintiff, and mailed to:

Kenya Lynch, *pro se*
354 Neverland Drive
Middletown, DE 19709

/s/ Stacey L.B. Smith
STACEY L. B. SMITH
Assistant United States Attorney

Date: May 8, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENYA LYNCH,
       Plaintiff,

    v.

JULIE A. SU,[1]
ACTING SECRETARY OF LABOR
UNITED STATES DEPARTMENT OF
LABOR,
       Defendant.

CIVIL ACTION NO. 22-cv-00091

## O R D E R

AND NOW, this      day of        , 2023, upon consideration of

Defendant's Motion for Judgment on the Pleadings and/or for Summary Judgment,

and any response thereto, it is hereby **ORDERED** that the motion is **GRANTED**.

Judgment is entered in favor of defendant, and against plaintiff, on all claims.

BY THE COURT:

_____
HONORABLE NITZA I. QUIÑONES
ALEJANDRO
*Judge, United States District Court*

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Acting Secretary Julie A. Su is substituted for former Secretary Martin J. Walsh.

## Table of Exhibits

Exhibit A - ROI_Redacted

Exhibit A.2 - Supplemental ROI

Exhibit B - FAD_Redacted

Exhibit C - DOL00002 - Awards List 2016-2018

Exhibit D - Lynch Dep

Exhibit E - DOL00003 - Case Assignments 2010-Present

Exhibit F - Amended Answers to Pltf Rogs

Exhibit G - Amended Responses to Pltf RFAs