### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENYA LYNCH** | : | **CIVIL ACTION** |
| *Plaintiff, pro se* | : | |
| | : | **NO. 22-0091** |
| **v.** | : | |
| | : | |
| **JULIE A. SU**[1] | : | |
| *Acting Secretary of Labor* | : | |
| *United States Department of Labor* | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                JANUARY 24, 2024

## MEMORANDUM OPINION

**INTRODUCTION**

   Plaintiff Kenya Lynch ("Plaintiff") filed this *pro se* employment action against Defendant Julie A. Su ("Defendant"), Acting Secretary of Labor, asserting claims of unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1976, 29 U.S.C. § 621 *et seq.*, (the "ADEA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, (the "Rehabilitation Act").  Specifically, Plaintiff asserts that Defendant unlawfully terminated her employment because of her race, color, religion, sex, age, national origin, disability, and in retaliation for her prior protected Equal Employment Opportunity ("EEO") activities.

   Presently, before this Court is Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, (ECF 24), and Plaintiff's response in opposition

---

[1]     Julie A. Su became the Acting Secretary of Labor on March 11, 2023, and is herein substituted for Martin J. Walsh as Defendant in this action.  *See* Fed. R. Civ. P. 25(d).

thereto.  (ECF 27).[2]  The issues presented in the motion are fully briefed and, therefore, are ripe

for disposition.  For the reasons set forth herein, Defendant's motion for summary judgment is

granted.  Accordingly, judgment is entered in favor of Defendant on all of Plaintiff's claims.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence

and the supported relevant facts in the light most favorable to the non-movant — here, Plaintiff.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186,

196 (3d Cir. 2011).  The facts relevant to the underlying motion are summarized as follows:[3]

Plaintiff is a Black Latina originally from Costa Rica who identifies as Muslim and wears a hijab to work.  Plaintiff suffers from neuropathy and hearing and neuro skeletal impairments which she claims interfere with one or more of her major life activities, including hearing, walking, and standing.  In 2019, Plaintiff was 49 years old.

Plaintiff commenced her employment in 2009, with Defendant, the United States Department of Labor ("DOL") within the Employee Benefits Security Administration in Philadelphia, Pennsylvania.  At all relevant times, Plaintiff was employed by Defendant as an Employee Benefits Investigator, at a GS-12 grade level.  Plaintiff's first, second, and third-level supervisors were: Stephanie D. Thimodo (Supervisory Investigator), Norman D. Jackson (Deputy Regional Director), and Michael A. Schloss (Regional Director), respectively.

Commencing in 2015, Plaintiff served as an NCFLL/Local 644 Union or Shop Steward for the Philadelphia and Washington, D.C. offices, and in other agencies.  Plaintiff contends that she served as a witness or representative on several EEO matters regarding employees in those offices, including in May 2016, when Plaintiff testified in an EEO case involving another complainant.[4]

On October 12, 2018, Plaintiff initiated an informal discrimination complaint with the DOL's Civil Rights Center ("CRC").  On January 28, 2019, Plaintiff filed a formal EEO complaint with the CRC.  In her formal EEO

---

[2]     This Court has also considered Defendant's reply.  (ECF 32).

[3]     These facts are taken from the parties' briefs, exhibits, and statements of facts.  To the extent that any fact is disputed, such dispute will be noted and, if material, will be construed in Plaintiff's favor.

[4]     Plaintiff provides no evidence that she has served as a witness or representative in EEO cases.

complaint, Plaintiff claimed that her "employer has engaged in unfair non[-] selection of promotion, i[m]plicit bias, harassment, hostile work environment, disparate treatment."  Plaintiff made clarifications and/or amendments to these allegations on February 26, 2019, July 25, 2019, November 5, 2019, and November 22, 2019.[5]  In her CRC charge of discrimination, Plaintiff appears to allege the following:[6]

> 1.      On October 3, 2018, [Plaintiff was] not selected for the position of Employee Benefits Investigator, GS-13 posted under announcement number MS-18-PHIL-EBSA-0072;
>
> 2.      On an ongoing basis[,] the agency has disproportionately assigned prominent cases with higher monetary results, opportunities for advancement, awards/recognition, and training to younger white males;
>
> 3.      On an ongoing basis[,] the Regional Director has been antagonistic, condescending[,] and patronizing towards [her] and the District Regional Director has admonished [her] via emails, referred to [her] as "you people" and referred to women as the source and cause of the issues in the office;
>
> 4.      On an ongoing basis[, Plaintiff's] work has been disproportionately scrutinized over that of [her] peers;
>
> 5.      On May 6 and July 11, 2019, [Plaintiff's] request for oral case reviews with [her] supervisor [were] denied;
>
> 6.      On unspecified dates, [Plaintiff was] instructed not to use [her] radio at [her] desk, even though others are allowed to do so;
>
> 7.      On unspecified dates, [Plaintiff was] denied telework, while [her] co-workers were allowed to telework;
>
> 8.      On unspecified dates, [Plaintiff was] denied [her] requested reasonable accommodation of a private office;

---

[5]      The February 2019 clarification and July 2019 amendment are attached as exhibits by Defendant, (*see* Def's. Mot., ECF 24-1, at Ex. A) and all the amendments are referenced in the Final Agency Decision attached by Defendant, (*see* Def's. Mot., ECF 24-3, at Ex. C).

[6]      Defendant produced a copy of Plaintiff's administrative charge of discrimination, the Report of Investigation, Supplemental Report of Investigation, and Final Agency Decision from which this Court has drawn Plaintiff's administrative allegations.

9.     On unspecified dates, [Plaintiff was] denied case extensions;

10.    On unspecified dates, [Plaintiff was] required to request official time in advance while others were not required to do so and these requests were scrutinized more than those of [her] peers;

11.    On unspecified dates, [Plaintiff has] been required to work on [her] cases independently, even though [her] peers have been provided with assistance on their cases, including assistance by [her];

12.    On unspecified dates, [Plaintiff has] not been given credit for work that [she] completed; and

13.    On unspecified dates, management officials (knowing of [her] hearing impairment) have deliberately spoken in a low voice so that [she would] not hear them.

(Def's. Mot., ECF 24-1 Ex. A, at pp. 22–23; Pl's. Resp., ECF 31).

On January 13, 2020, the CRC commenced its investigation of Plaintiff's formal EEO charge of discrimination, and on January 21, 2020, issued a Report of Investigation ("ROI") and an ROI Addendum on September 9, 2020.  The CRC issued on October 5, 2021, its Final Agency Decision, finding that:

[Plaintiff] failed to establish that she was subjected to disparate treatment, or a hostile environment based on her race, color, religion, sex, parental status, age, national origins, disability, and/or in reprisal for prior EEO activity[,] age, sex, race, color, national origin, religion, parental status, disability, and/or reprisal for prior EEO activity.

(Def's. Mot., ECF 24-3 Ex. B, at p. 68).

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice.  Fed. R. Civ. P. 56.  Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the

litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Additionally, "courts must accord special care to pro se claimants, liberally construing their filings and holding them to less

stringent standards than formal pleadings drafted by lawyers." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 824 (3d Cir. 2020).

**DISCUSSION**

As noted, Plaintiff asserts that Defendant violated Title VII, the ADEA, and the Rehabilitation Act by discriminating and retaliating against her for her non-selection or non-promotion to the Employee Benefits Investigator a GS-13 position, because of her race, color, religion, sex, age, nationality, disability, and prior EEO activities.  Defendant moves for summary judgment on Plaintiff's claims arguing that Plaintiff (a) failed to exhaust her administrative remedies before filing suit and (b) failed to present evidence sufficient to meet her burden with respect to the *prima facie* elements of her discrimination claims.  These arguments are addressed in turn.

*Administrative Exhaustion*

As noted, Defendant argues that Plaintiff failed to exhaust her administrative remedies before the CRC or the Equal Employment Opportunity Commission (the "EEOC") on some of her claims before filing this employment discrimination civil action and, therefore, these claims fail. Plaintiff disagrees.

Generally, before bringing an employment discrimination suit in federal court, "a plaintiff must first file a charge with the EEOC."  *See Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009); *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 109 (3d Cir. 2014) ("Before an employee may file suit under the ADEA, however, a plaintiff is required to exhaust administrative remedies by filing a charge of discrimination with the EEOC."); *Spence v. Straw*, 54 F.3d 196, 202–03 (3d Cir. 1995) ("[W]e have found that a litigant must exhaust administrative remedies under Title VII before filing suit against a federal agency alleging discrimination . . . .").  "The purpose of this

administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Webb*, 562 F.3d at 262. "[T]he aggrieved party 'is not permitted to bypass the administrative process.'" *Id.* at 263 (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)). "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." *Ostapowicz*, 541 F.2d at 398 (internal citations omitted). "The test for determining if a plaintiff properly exhausted is whether the facts alleged in the subsequent Title VII action are fairly within the scope of the prior EEOC complaint or the investigation arising therefrom." *Baur v. Crum*, 882 F. Supp. 2d 785, 802 (E.D. Pa. 2012).

When the DOL is the employing agency, however, the CRC must first be afforded the opportunity to investigate a formal complaint of discrimination and create a ROI for the aggrieved party, who then may either request a hearing before the EEOC or request a Final Agency Decision from the CRC. 29 C.F.R. §§ 1614.101–110. A party who requests a final decision then has thirty (30) days from the date of the decision to appeal to the EEOC or ninety (90) days from the date of the decision to file a civil action in a federal district court. *Id.* A party may select to file both an appeal with the EEOC and a civil action in a federal district court. *Id.* A Final Agency Decision from the CRC or a right-to-sue letter from the EEOC constitutes administrative exhaustion under Title VII, the ADEA, and the Rehabilitation Act. *See Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014); *see also Estacio v. Potter*, 2008 WL 356478, at *6 (E.D. Pa. Feb. 6, 2008) (explaining that plaintiff "had 30 days to file an appeal to the EEOC or 90 days to challenge the final agency decision by filing in the federal district court" to properly exhaust his claims). Here,

Plaintiff requested a Final Agency Decision from the CRC, which was submitted on October 5, 2021.  Plaintiff timely filed this civil action on January 3, 2022.

Defendant argues that Plaintiff failed to administratively exhaust the claims alleged in Paragraphs 18 and 20–23 of her complaint, specifically:

> <u>18</u>:  On June 8, 2020, Plaintiff was not selected to the position of Employee Benefits Investigator, GS-13, posted under the vacancy announcement: MS-20-CHI-EBSA-0014, at EBSA, Philadelphia Regional Office.
>
> <u>20</u>:  On or about May 2019, Plaintiff was denied the opportunity to attend the Federal Law Enforcement Training (FLET) held at FLET Center, in Georgia.
>
> <u>21</u>:  Between 2017 and 2018, Plaintiff was denied her telework request for more than three days a week as a reasonable accommodation.
>
> <u>22</u>:  Since 2012 to present, Plaintiff's work was severely scrutinized, and unfairly managed by Supervisor Stephanie Thimodo, DRD Norman Jackson, and RD Michael Schloss.
>
> <u>23</u>:  On or about 2018, Supervisor Thimodo, under the direction of DRD Jackson, requested that Plaintiff provide daily work logs of her activities while on telework under a temporary reasonable accommodation.

(Compl., ECF 1, at ¶¶ 18, 20–23).

Comparing the charges alleged before the CRC and those in Plaintiff's complaint, in her charge of discrimination adjudicated by the CRC, Plaintiff proffers the same legal argument and the same basis for discrimination as she does before this Court — race, color, religion, sex, age, national origin, disability, and/or reprisal for prior EEO activity.  (*See* Def's. Mot., ECF 24-3 Ex. B, at p. 1).  Specifically, in its Final Agency Decision, the CRC indicated that Plaintiff claimed her "work has been disproportionately scrutinized over that of her peers." (*See id.* at. p. 11).  This allegation is indistinguishable from that alleged in Paragraph 22 of her complaint.  (*See* Compl.,

ECF 1, at ¶ 27; Pl's. Resp., ECF 27, at p. 6).  Additionally, during the administrative proceedings, Plaintiff asserted that her employer disproportionately assigned training opportunities to younger white males. (*See* Def's. Mot., ECF 24-3, at p. 2).  In her complaint, Plaintiff alleges that she was denied the opportunity to attend the Federal Law Enforcement Training in May 2019, (*see* Compl., ECF 1, at ¶ 20), a new, yet similar act that occurred during the pendency of the proceedings and grew out of the same charges of discrimination in her administrative charge, *i.e.*, denial of training opportunities.  Upon review of CRC's Final Agency Decision issued October 5, 2021, it is clear that the claims asserted in Paragraphs 20 and 22 of Plaintiff's complaint are nearly identical to those Plaintiff presented in her CRC charge or are new similar acts which occurred during the pendency of proceedings before the CRC.  *See* O*stapowicz*, 541 F.2d at 39.  As such, Plaintiff's claims premised on the acts alleged in Paragraphs 20 and 22 have been exhausted.

Plaintiff's claims premised on Paragraphs 18, 21, and 23 of her complaint, however, have not been administratively exhausted.  At Paragraph 18, Plaintiff alleges that she was denied a position on June 8, 2020.  This conduct was not asserted in the administrative charge (or any of the supplements) nor before the amended report of investigation was issued in September 2020, when it could have been and, thus, this claim was not administratively exhausted.

At Paragraphs 21 and 23, Plaintiff alleges that she was denied specific requests for accommodations sometime between 2017 and 2018.  This is conduct that was not asserted in the administrative charge and which occurred **before** Plaintiff filed her administrative charge and, therefore, should have been part of her administrative action.  Since Plaintiff failed to include this conduct in her CRC action, it has not been exhausted.  Further, under these circumstances, these claims and/or the facts underlying them could not be deemed as reasonably expected to grow out of the charge of discrimination or reasonably likely to have been discovered as part of the CRC's

investigation.  Allowing the claims in Paragraphs 18, 21, or 23 "to go forward would amount to an administrative bypass."  *See Webb*, 562 F.3d at 263.  Thus, this Court finds that the claims asserted in Paragraphs 18, 21, and 23 of Plaintiff's complaint were not exhausted and, therefore, are dismissed.

In summary, after comparing the claims raised and adjudicated by the CRC to those Defendant argues were not exhausted, this Court finds that Plaintiff exhausted the claims premised on the allegations in Paragraphs 20 and 22 but failed to exhaust claims premised on the allegations in Paragraphs 18, 21, and 23.  This Court will now turn to those claims that Plaintiff exhausted and which Defendant argues lack merit.

### *Discrimination*

Plaintiff alleges that Defendant unlawfully discriminated against her in violation of Title VII,[7] the ADEA,[8] and the Rehabilitation Act.[9]  Claims arising under each Act are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (explaining that "the methods and manner of proof under one statute [ADEA or Title VII] should inform the standards under the others" and "the familiar framework established in *McDonnell Douglas Corp.* . . . for Title VII cases is equally applicable to discrimination claims under the Rehabilitation Act").

---

[7]  Title VII, as amended, makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).

[8]  The ADEA prohibits discrimination motivated by age against individuals 40 years and older.  29 U.S.C. § 621.

[9]  The Rehabilitation Act prohibits any program or activity that receives federal financial assistance from discriminating based on disability status.  29 U.S.C. § 794, *et seq.*

Under *McDonnell Douglas*, "[t]he complainant . . . must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." 411 U.S. at 802. To maintain a viable claim under Title VII, the ADEA, and the Rehabilitation Act, a plaintiff must present evidence to show, *inter alia*, that the plaintiff: (1) "is a member of a protected class; (2) was qualified for the position which she held; (3) suffered an adverse employment which was (4) taken under circumstances giving rise to an inference of discrimination." *Emerson v. Stern & Eisenberg, P.C.*, 2022 WL 10208548, at *4 (E.D. Pa. Oct. 17, 2022) (applying elements to Title VII claims); *see also Estacio*, 2008 WL 356478, at *9–10 (same for ADEA and Rehabilitation Act claims). Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this step, the burden shifts back to the plaintiff to show that the legitimate reason(s) proffered by the defendant is merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 804–05 (3d Cir. 1994).

In the motion, Defendant argues that Plaintiff has failed to present evidence sufficient to show that she was subject to an adverse employment action[10] or that the alleged adverse employment actions were on account of any protected ground. Plaintiff disagrees.

1. *Adverse Employment Actions*

The United States Court of Appeals for the Third Circuit (the "Third Circuit") has defined an "adverse employment action" "as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). In plain terms, "[t]angible employment actions are those that effect a 'significant change in employment status, such as hiring, firing,

---

[10]     Defendant acknowledges that failure to hire/promote is an adverse employment action, but challenges whether other alleged conduct amounts to adverse employment actions.

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 696 (E.D. Pa. 2016) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013)). An adverse action can also include "other employment decisions to the list of adverse employment actions, such as placing an employee in a potentially less profitable sales position, failing to rehire someone, suspending someone without pay, and revoking a person's office, dismissing her secretary, and assigning her less work." *Remp v. Alcon Laby's., Inc.*, 701 F. App'x 103, 107 (3d Cir. 2017) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003); *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001); *Goosby v. Johnson & Johnson Med., Inc. v. Ellerth*, 228 F.3d 313, 319 (3d Cir. 2000); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 154–54 (3d Cir. 1999)). Additionally, a "term or condition of employment" includes wages and the type of work for which one is responsible. *Urey v. Grove City Coll.*, 94 F. App'x 79, 81 n.2 (3d Cir. 2004); *see also Young v. St. James Mgmt., LLC*, 749 F. Supp. 2d 281, 297 (E.D. Pa. 2010) ("Although the denial of snacks, bottled water[,] and parking spaces may be frustrating [terms of employment], these actions are not so significant as to alter the terms of [a plaintiff's] employment.").

Here, Defendant argues that Plaintiff has failed to meet her summary judgment burden with respect to any claims premised on the adverse employment actions alleged in Paragraphs 22 and 24–33 of her complaint because either she presented no evidence to support the occurrence of the adverse action, or the purported actions are not adverse employment actions as a matter of law. In Paragraphs 22 and 24–33, Plaintiff alleges the following adverse employment actions: (1) Plaintiff was severely scrutinized; (2) Plaintiff's supervisor denied her request for a case extension; (3) Plaintiff was denied credit for work; (4) Plaintiff was required to request official time off in advance; (5) Plaintiff was held to a higher standard of performance by her supervisor and told to

be "perfect 100 of the time;" (6) Plaintiff was accused of lying; (7) Plaintiff's supervisors have

been "antagonistic, condescending, and patronizing to her on many occasions;" (8) on May 6, 2019

and July 11, 2019, Plaintiff's supervisor denied her an oral case review; (9) Plaintiff was forced to

work independently; (10) Plaintiff was not allowed to use a radio at her desk; and (11) on or about

October 30, 2019, Plaintiff's supervisor rated her as "Fully Satisfactory" on her FY 2019 annual

performance appraisal.[11]

Despite Plaintiff's obligation to provide specific citations to record evidence to support her

version of these purported material facts, she points to almost no evidence and merely restates the

above examples as the adverse employment actions on which her claims rest or cites evidence that

does not show what she claims it shows.[12]  Notably, Rule 56 requires a plaintiff who contends that

a fact is genuinely disputed to support the assertion by "citing to *particular* parts of materials in

the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motions only), admissions,

interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).  On

summary judgment, a district court is not required to undertake an independent search of the record

but need only consider "cited materials."  *Id.* at 56(c)(3).

---

[11]     Defendant challenges Plaintiff's claims premised on other alleged adverse employment actions at
the next steps of the *McDonnell Douglas* analysis.

[12]     For example, Plaintiff provides an annotated document which she contends shows that her
supervisors did not want to grant her an extension on her case.  However, it is unclear whether she annotated
the document or her supervisors annotated it to convey that case deadlines were not granted for her but
were for others.  In addition, the exhibit Plaintiff points to as evidence that she was denied her oral case
review appears nowhere in the record.  Plaintiff also provides no evidence that she was held to a higher
standard of performance by her supervisor and told to be "perfect 100% of the time."  Lastly, the evidence
Plaintiff provides to show she was unfairly evaluated in 2019 is an email from 2016 disputing other ratings
she received, and not her ratings from 2019.

Here, Plaintiff has failed to point to record evidence to support any of her allegations.  As such, she has failed to meet her summary judgment burden.  Further, many of the alleged actions by Defendant on which Plaintiff relies do not constitute adverse employment actions.  For example, being treated in an antagonistic, condescending, and patronizing manner, held to a higher standard of performance, accused of lying, overly scrutinized, and denied credit for work are not adverse employment actions do not qualify as adverse employment actions.  *See Buffa v. N.J. State Dep't of Judiciary*, 56 F. App'x 571, 576 (3d Cir. 2003) (explaining that where plaintiff argued "that she was subjected to harassment, intense scrutiny, and overly-critical supervision as a result of having filed grievances," this did not "qualify as adverse employment actions"); *Lassalle v. Port Auth. of New York & New Jersey*, 2013 WL 6094339, at *12 (D.N.J. Nov. 19, 2013) (finding that being called "a liar" is not materially adverse); *Ferguson v. Deptford Twp.*, 2008 WL 5401630, at *5 (D.N.J. Dec. 22, 2008) ("Allegations of intense scrutiny, overly critical supervision unnecessary reprimands or derogatory comments do not constitute an adverse employment action.").  "[D]ifficulty and unfairness alone are not enough to show discrimination." *Raffaele v. Potter*, 2012 WL 33035, at *7 (E.D. Pa. Jan. 6, 2012); *see also McClelland v. Dechert, LLP*, 2022 WL 2109190, at *7 (E.D. Pa. June 10, 2022) (explaining that plaintiff's claims regarding "unrealistic deadlines and excessive workload" failed to create a genuine issue of material fact).

Additionally, Defendant has presented evidence, which Plaintiff does not dispute, that when Plaintiff requested official time off, as required by her collective bargaining agreement, leave was granted, even when she requested official time the same day she needed it.  (Def's. Mot., ECF 24, at p. 22) (citing ECF 24-1 Ex. A, at pp. 43–44; ECF 24-5 Ex. D, at pp. 104–05).  Defendant has also presented evidence showing that Plaintiff's case review could be conducted in writing, rather than orally, and that monthly case reviews are not required.  (Def's. Mot., ECF 24-1 Ex. A,

at pp. 48–49).  This Court also finds that not being allowed to use a radio at Plaintiff's desk, being given only a "Fully Satisfactory" rating, and being denied a training opportunity are not adverse employment actions.  *See Ford v. Cnty. of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018) (holding that where plaintiff asserted that she was denied opportunity to attend training, "[t]he denial of an opportunity to become marginally more efficient in the execution of her duties does not constitute an adverse employment action").  For the reasons set forth, Defendant's motion for summary judgment is granted as to Plaintiff's discrimination claims premised on the above-alleged "adverse employment actions."[13]

### 2.  *Inference of Discrimination/Causation*

Defendant moves for summary judgment on Plaintiff's claim that she was assigned to less prominent cases than her peers on the basis that Plaintiff has failed to present evidence from which a reasonable factfinder could infer that this conduct was attributable to unlawful discrimination and/or racial animus or, otherwise, does not supports an inference of discrimination.[14]  To support an inference of discrimination, a plaintiff generally must present comparator evidence or "evidence that [the employer] treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff."  *Darby v. Temple Univ.*, 215 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (quoting *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011)).  In the absence of comparator evidence, the plaintiff may present "evidence of similar discrimination of other employees, or direct evidence of discrimination from statements or actions by [her] supervisors suggesting animus."  *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010).  When using comparator evidence, "[t]he plaintiff has the burden of demonstrating that

---

[13]    *See* discussion *supra* pages 12–13.

[14]    Defendant does not challenge that Plaintiff has alleged an adverse employment action as to this claim.

similarly situated persons were treated differently." *Simpson Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998). For a person to be "similarly situated," the person must be similar in "all relevant respects." *Ospatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). In assessing similarly situated comparators, relevant factors include "the employees' job responsibilities, the supervisors and decision-makers, [and] the nature of the misconduct . . . ." *Wilcher*, 441 F. App'x at 882. The nature of the instances of misconduct must be of "comparable seriousness." *Opsatnik*, 335 F. App'x at 223 (internal citations omitted). "[S]ummary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated." *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014).

Here, Plaintiff specifically alleges that (1) she was assigned to less prominent cases leading to lower monetary results than Brandon Pfister, who was assigned more criminal cases than her, and that (2) Efren Cazales, Jim Moran, and Todd Hassler "were allowed to refuse healthcare cases," allegedly considered "less prominent." (Compl., ECF 1, at ¶ 19). Plaintiff, however, fails to cite to or proffer any record evidence to support these, otherwise, bald allegations. That is, Plaintiff has not presented any evidence that these other employees were treated more favorably under similar circumstances or any evidence to show that these employees were similarly situated. Plaintiff also baldly asserts that three other Black women similar to her were assigned "menial cases" or forced to work in a hostile environment. However, in the absence of any evidence to support these contentions, Plaintiff has not met her summary judgment burden. *Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017) (affirming district court's grant of summary judgment where plaintiff did not provide evidence that "similarly situated person was treated differently"). Accordingly, Defendant's motion is granted with respect to Plaintiff's discrimination claims premised on receiving less prominent cases.

3. *Pretext*

Plaintiff asserts that Defendant unlawfully discriminated against her by not selecting her for the position of Employee Benefits Investigator, a GS-13 grade level.[15]  Defendant disagrees and presents evidence that the two candidates selected, Brandon Pfister and Efren Cazales, were better qualified than Plaintiff for the position.[16]  Defendant argues that the decision to hire the two selected individuals was based on their qualifications, and that this proffered reason constitutes a "legitimate, nondiscriminatory reason" for the employment action which Plaintiff has failed to rebut it with evidence of pretext.  *McDonnell Douglas*, 411 U.S. at 802.

An employer's burden "is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Id.* (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

---

[15]    In the motion for summary judgment, Defendant does not argue that Plaintiff has not met the *prima facie* elements as to her claims that Defendant failed to hire/promote her for the Employee Benefits Investigator, GS-13 position.  Rather, Defendant argues that Plaintiff has failed to meet her summary judgment burden of rebutting Defendant's non-discriminatory reason(s) for her action.

[16]    Defendant proffered evidence that the Agency interviewed candidates of a variety of genders, ages, races, and colors, and considered the following:

> applicants' responses to the questions posed; their prior performance ratings; their progress on open investigations as measured by quarterly case reviews; their requested writing samples; their active investigative work on complex cases; their work on major cases; their work on team assignments; their experience serving in a capacity as a project coordinator; their civil case results for the past three consecutive years; their criminal results for the past three consecutive years; and, their referrals of civil cases for litigation for the past three consecutive years.

(Def's. Mot., ECF 24-1 Ex. A, at p. 38).  Mr. Michael Schloss, the selecting official, attested in an affidavit that the selected candidates "demonstrated superior performance to [Plaintiff]." (*Id.* at p. 46).  Furthermore, evidence shows that even if neither candidate had been selected, Plaintiff still would not have been selected because the selecting official ranked her fifth of the seven applicants.  (*Id.*).

Here, Plaintiff has not presented any counterevidence or argument to dispute Defendant's non-discriminatory reason for the selection made.  Regardless, at this stage, Defendant's evidence is sufficient to meet the "relatively light" burden.  *See Fuentes*, 32 F.3d at 765 (explaining that defendant articulated nondiscriminatory reason when it stated that the other candidate "was *better* qualified" than plaintiff); *see also Jacobs v. Mayorkas*, 2021 WL 3929718, at *4 (E.D. Pa. Sept. 1, 2021) ("Defendant's undisputed evidence that [other applicant] was the top-rated candidate, whereas [plaintiff] was fourth, following a regimented, multi-step selection process meets the burden of demonstrating a legitimate, non-discriminatory reason for failing to promote [plaintiff].").  Under the circumstances, this Court finds that Defendant has articulated a nondiscriminatory reason for not selecting Plaintiff.

Because Defendant has satisfactorily met the burden of articulating a legitimate, non-discriminatory reasons, "the burden shifts back once more to the plaintiff to show . . . that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Willis v. UPMC Child.'s Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).  A plaintiff can meet her burden on pretext in two ways. *Id.* (citing *Fuentes*, 32 F.3d at 762).  "The first way to show pretext is for the plaintiff to point to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action." *Id.* (citing *Fuentes*, 32 F.3d at 765).  "In order to raise sufficient disbelief, the evidence must indicate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *Id.* (quoting *Fuentes*, 32 F.3d at 765).  "Alternatively, the second way a plaintiff can establish pretext is to point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action."

*Id.* (quoting *Fuentes*, 32 F.3d at 764). "Specifically, the plaintiff can show pretext this way by presenting evidence 'with sufficient probative force' so as to allow the factfinder to 'conclude by a preponderance of the evidence that [a protected basis] was a motivating or determinative factor.'" *Id.* (quoting *Simpson*, 142 F.3d at 644–45). "Pointing to evidence demonstrating any of the following satisfies the second way to prove pretext: (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." *Id.*

In response to Defendant's articulated reasons for selecting the two other candidates over her, Plaintiff baldly challenges Defendant's proffered evidence as to the candidates' respective qualifications. While Plaintiff includes her own narrative disagreement as to Defendant's proffered evidence, she provides no record evidence to support the narrative that she was "better qualified." At best, Plaintiff provides a chart that she created in which she compares herself to Cazales and Pfister but merely reasserts how they were assigned better cases while she was better qualified. However, this unsupported argument is insufficient to meet Plaintiff's summary judgment burden on pretext. *See Mills v. Phila. Gas Works*, 2007 WL 2071881, at *4 (E.D. Pa. July 19, 2007) (explaining that when plaintiff "insist[ed], without presenting any factual support, that he was 'best qualified' for the job" but "failed to present any evidence, other than his unsubstantiated belief, that non-African-Americans were treated more favorably" and "merely relie[d] on the allegations in his amended complaint[,]" he failed to make out *prima facie* case of discrimination). Rather, "what [Plaintiff] requests is protection that [the law] does not afford: for the Court to stand in as decision-maker and determine which of [the] undisputedly qualified candidates was better suited for the [position]." *Jacobs*, 2021 WL 3929718, at *5. Because

Plaintiff here has failed to present evidence of pretext, Defendant's motion for summary judgment is granted as to all of Plaintiff's discrimination claims premised on Defendant's failure to hire/promote her to the GS-13 position.

### *Plaintiff's Retaliation Claim*

Plaintiff also asserts a claim for retaliation premised on allegations that Defendant engaged in the same adverse employment actions discussed above in retaliation for her service as a witness and/or representative on several EEO cases or matters representing other employees.  Defendant moves for summary judgment on Plaintiff's retaliation claims on the basis that Plaintiff has failed to present evidence to support the requisite adverse employment action for a retaliation claim and has failed to establish pretext.  This Court agrees.

To establish a *prima facie* case of retaliation, Plaintiff must show that:  (1) she engaged in activity protected by Title VII, the ADEA, or the Rehabilitation Act; (2) Defendant took a materially adverse employment action against her; and (3) a causal connection exists between her participation in the protected activity and Defendant's adverse action.  *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).  Plaintiff's retaliation claim is subject to the same *McDonnell Douglas* burden-shifting analysis applied to Plaintiff's other discrimination claims.  *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).  As such, Plaintiff must first present evidence sufficient to meet each of the *prima facie* elements, and then, if the employer articulates a non-discriminatory reason for its action, she must present evidence of pretext.  *See id.*

As discussed above in the discrimination analysis, Plaintiff has failed to present any evidence to substantiate the alleged adverse employment actions and has failed to present evidence to show that Defendant's proffered reasons for not selecting Plaintiff for the GS-13 position, *i.e.*,

other individuals were more qualified, were pretextual and in retaliation.  For the same reasons set

forth, Defendant's motion for summary judgment on Plaintiff's retaliation claims is granted.[17]

### Plaintiff's Hostile Work Environment Claim

Defendant also moves for summary judgment on Plaintiff's hostile work environment

claim, arguing that Plaintiff fails to present any evidence to support such a claim.  In her response,

Plaintiff presents no rebuttal argument or evidence to support her hostile work environment claim.

At best, Plaintiff cites to a few paragraphs in her complaint in which she alleges a "pattern of

discriminatory, retaliatory, and hostile conditions" to which she was subjected.  (Pl's. Resp., ECF

27, at p. 5).  As noted, this is insufficient to meet her burden at the summary judgment stage.  *See*

*Murray-Sims v. N.J. Transit Corp.*, 2014 WL 6991906, at *17 (D.N.J. Dec. 10, 2014) (explaining

that "it is the parties' responsibility to review the record and identify relevant evidence" for hostile

work environment claim); *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 463 (E.D. Pa.

2013) (explaining that "a plaintiff cannot rely on unsupported allegations in her complaint to

survive a motion for summary judgment" on hostile work environment claim (internal quotation

---

[17]     Defendant also argues, and this Court agrees, that Plaintiff has failed to establish causation.  "[A] plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Moore*, 461 F.3d at 341–42.  "A plaintiff may establish a causal connection through the 'unusual suggestive temporal proximity' of the adverse action to the protected activity, 'a pattern of antagonism coupled with timing' or other facts supporting an inference of causation." *Ragsdale v. Univ. of Pa. Health Sys.*, 613 F. Supp. 3d 888, 895 (E.D. Pa. 2020).  Here, Plaintiff alleges that she was retaliated against due to her protected activity of serving as a union steward and EEO representative since 2015 and providing testimony as an EEO witness in May 2016.  Importantly, Plaintiff does not provide any evidence to show that Plaintiff's supervisors or those hiring for the Employee Benefits Investigator, GS-13 position were aware of her protected activity.  Additionally, there is no temporal proximity between Plaintiff's alleged protected activity occurred in 2016, and Plaintiff being denied the position two years later.  *See Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016) (finding that "temporal proximity of approximately one month between the [adverse employment action] and his termination" does not demonstrate causal connection); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding that three-week gap between complaint and termination letter did not establish causation).  Under these circumstances, Plaintiff has failed to establish the causation element of retaliation.

marks omitted)).  Thus, Defendant's motion for summary judgment is granted as to Plaintiff's hostile work environment claim.

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet her summary judgment burden with respect to any of her claims.  Accordingly, Defendant's motion for summary judgment is granted.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.